STATE ex rel. J. M. CALDWELL v. EWING COCK-RELL, Judge.

In Banc, December 22, 1919.

1. **PROHIBITION: Primary Question: Jurisdiction.** In prohibition brought to prohibit a judge from acting, the primary question is whether the subject-matter of the proceeding in which judicial action is apprehended lies within the court's jurisdiction, or. if it does, whether the particular act to be stayed will exceed the jurisdiction.

2. **CONTEMPT: Authority of Court to Punish.** Circuit courts have power to punish, as for contempt, their officers, including their clerks, for disobeying a judicial order, or otherwise obstructing the administration of justice, or offending the dignity of the court. And if the offense is committed in the presence of the court, the offender may be punished summarily.

3. ———: ———: **Refusal of Clerk to Enter Directed Judgment: Unintelligible Rules.** The refusal of the circuit clerk to enter a judgment in accordance with the directions of the judge and the prescribed rules of court is contempt; and the fact that the forms and rules prescribed are unintelligible, and that the rules require the judgments themselves to refer to such forms and to omit the recitals contained in the forms to which reference is made, and that the judgment is not complete unless the words referred to are included, is not an excuse for disobedience, for the intelligibility of the directed entries and the legality of the rules are not questions for the clerk's decision, but are judicial questions, to be raised in a case where they are material.
Being urged by both parties that the court, though it be collateral to the main issue, express its opinion as to the propriety of such rules and reference to other record entries, *suggested*, by WALKER, C. J., concurring, that the judgment should itself be complete and its finality made to depend on its own terms, free from any reference to former orders in the case.
*Held*, by GRAVES, J., concurring, with whom BLAIR and WOODSON, JJ., concur, being invited by respondent to rule the point, that a reference in a judgment to rules of court and forms prescribed is not a compliance with the statute, but the judgment rendered should by its own terms be complete.

4. ———: ———: **Clerk's Duties: Ministerial.** The statute forbids the circuit clerk to alter or impair a record, and expressly commands him to record the judgments, rules, orders and other pro-

ceedings of the court; and in doing so he acts ministerially, as the hand of the court, who alone can pronounce the judgment of the law, and has the power to make the records speak his pronouncement in exact truth.

5. **PROHIBITION: To Prohibit Commitment for Contempt.** If relator was not in contempt, prohibition to prohibit the inferior court from punishing him for contempt is not the remedy. The court being vested with a judicial discretion, cannot be prohibited from making a mistake. The usual remedy to relieve against a judgment unlawfully adjudging a person guilty of contempt of court is *habeas corpus.*

PROHIBITION.

WRIT DENIED.

*A. Musser, M. D. Aber, R. M. Robertson, E. C. Littlefield, J. M. Crutchfield, S. J. Caudle, W. L. Chaney, W. E. Suddath* and *Nick M. Bradley* for relator.

(1) It is beyond the power of any court to make rules or take action which comes into collision with either the organic or statutory law. State ex rel. v. Withrow, 133 Mo. 522; Gormerly v. McGlynn, 84 N. Y. 284; Works on Courts and Their Jurisdiction, p. 177; State ex rel. Partridge v. Lewis, 71 Mo. 170; State v. Underwood, 75 Mo. 230; State ex rel. v. Gideon, 119 Mo. 94; Calhoun v. Crawford, 50 Mo. 458; Purcell v. Railroad, 50 Mo. 504; 4 Am. & Eng. Ency. Law, 450. (2) Prohibition is the proper remedy when the action of the lower court exhibits evidences of excess of jurisdiction, as well as when exhibiting absolute absence of jurisdiction. State ex rel. v. Withrow, 133 Mo. 522; Eppo v. People, 20 N. Y. 541; Ward v. Kelsey, 14 Abb. Pr. 106; State v. Ridgall, 2 Bailey (S. C.) 560; People ex rel. v. Supervisors, 47 Cal. 81. (3) Proceedings and records of any court of record . . . shall be in the English language, . . . . in a fair, legible character, in words at length, and not abbreviated. Sec. 3860, R. S. 1909. And the above section is mandatory. State v. Wilson, 117 Mo. 570; State v. Scabee, 255 Mo. 270.

(4) The form of decree prescribed by the court in the case of Scott v. Scott, is not in the English language. Stein v. Meyers, 253 Ill. 199. (5) Full entries of the orders and proceedings of all courts of record of each day shall be read in open court in the morning of the succeeding day, except, etc. Sec. 3860, R. S. 1909. (6) A judgment must recite and the records show that process was duly served on defendant, and must disclose the existence of every material fact to give the court jurisdiction. 23 Cyc. 767.

*James C. Jones* for respondent.

(1) "Every clerk shall record the judgments, rules, orders and other proceedings of the court." Sec. 2685, R. S. 1909. (2) "A clerk of a court is a mere ministerial officer, whose duty it is to record only such orders as the court may direct." Kansas City Pump Co. v. Jones, 126 Mo. App. 540; LaCoste v. Eastland, 117 Cal. 673; Robostelli v. Railroad Co., 34 Fed. 507; Ramaley v. Ramaley, 69 Minn. 491. (3) "The Judge has superintendence and control of manner in which the court records are kept." Sec. 3859, R. S. 1909; Houston v. Williams, 13 Cal. 24, 73 Am. Dec. 568. (4) "Every court of record shall have power to punish as for criminal contempt persons guilty of . . . willful disobedience of any process or order lawfully issued or made by it." Sec. 3881, R. S., 1909; Watson v. Williams, 36 Miss. 331; Krueger v. Williams, 153 S. W. 903; Territory v. Clancy, 37 Pac. 1110. (5) "Circuit courts have inherent power, irrespective of statutory enactment, to promulgate and enforce rules." State ex rel. v. Withrow, 135 Mo. 380. (6) Prohibition does not lie in this case. Morse v. Burckhartt, 87 Mo. 536; State ex rel. v. Mills, 231 Mo. 501; State ex rel. v. Broaddus, 234 Mo. 367.

GOODE, J.—The respondent, Honorable Ewing Cockrell, is Judge of the Circuit Court of Johnson County, and of the circuit courts of the other counties in the Seventeenth Judicial Circuit. The relator, J. M. Cald-

well, is Clerk of the Circuit Court of Johnson County, and the purpose of this case is to prohibit the respondent, as judge of said court, from going further with a proceeding commenced by respondent against relator for a contempt in refusing to record two specific entries he was ordered by respondent to record, and for recording instead two other and different entries not directed by the court. One of the entries was directed to be recorded in the journal of the court's proceedings on the fifteenth day of October, 1917, in the case of Laura L. Maupin against Southern Surety Company, No. 5381, which entry was as follows: "Defendant by attorney files answer." Instead of recording said entry as directed, the clerk recorded the following: "Answer filed. Now at this day comes the defendant aforesaid, by its attorney, and files its answer to plaintiff's petition herein." The second entry relator refused to record as directed was a judgment of divorce rendered the ninth day of October, 1917, and to be entered on the journal of the proceedings of the court that day, namely, the judgment in the case of Georgia Scott against Vernon Scott, No. 5356. The entry of judgment to be made as directed by the court was this:

(A) "Plaintiff makes proof of publication in (b) Johnson County Democrat. Evidence submitted. Judgment for plaintiff on grounds [(c) defendant has absented himself without reasonable cause for more than a year] with restoration of former name [(d) Georgia Ann Hightower.]

"The true and complete record herein is the matter under heading Dvn. 2 in Record Book 38, beginning at page 311 incorporated into the above record and entry with the matter contained in the above alphabetically numbered brackets inserted in the correspondingly numbered brackets under the said heading and all written and construed as provided by rules and order of court September 3, 1917, as shown in Record Book 38 beginning at page 296."

(As it will be necessary to refer again to this form, we have designated it by the letter "A".)

Instead of the foregoing, relator recorded the following entry:

"Now at this day comes the plaintiff herein, in person and by her attorney, and files proof of publication of the order of publication of notice of this suit heretofore made in this cause; and said defendant although thereby duly summoned herein more than thirty days before the first day of this term of this court, and being now solemnly called, comes not, but herein makes default, and this cause being now called for hearing is taken up and submitted to the court, upon the petition, proofs and the evidence of credible witnesses; and the court, after seeing and hearing and duly considering the same, doth find, that said defendant has been duly served with process herein by publication of notice of this suit and all the objects thereof, for four weeks successively in the Johnson County Democrat, a weekly newspaper published in the County of Johnson and State of Missouri, the last insertion thereof being more than thirty days before the first day of this term of this court; and that said defendant has failed to appear, answer or plead herein, but has wholly made default, and plaintiff's petition stands as confessed by said defendant. The Court further finds that on or about the 15th day of January, 1911, the plaintiff was lawfully married to the defendant, and continued to live with him as his wife from and after said date until the first day of March, 1911; that plaintiff faithfully demeaned herself and discharged all her duties as the wife of the defendant, and at all times treated him with kindness and affection, but that defendant wholly disregarding his duties as the husband of the plaintiff, did on the first day of March, 1911, without any cause or excuse absent himself from plaintiff and ever since has and still does so absent himself without any cause whatever for more than one whole year next before the filing of her petition herein. The court further finds that the

18—280 Mo.

said plaintiff is now a resident of Johnson County, Missouri, and has lived in the State of. Missouri more than one whole year next before the filing of her petition in this suit; that the plaintiff is a person of good moral character and is the innocent and injured party and entitled to the relief prayed.

"It is therefore ordered, adjudged and decreed by the court here, that the bonds of matrimony contracted by and between the said plaintiff and defendant, be and hereby are, set aside and for naught held; that the said plaintiff be, and hereby is divorced from the said defendant and that her former name of Georgie Ann Hightower be restored to her and that the plaintiff pay the costs of this suit."

Relator in his petition and suggestions for the writ of prohibition does not specifically admit or deny that he had refused to record the two entries that he was charged in the citation to him in the contempt proceeding with refusing to enter. Neither does he admit or deny having recorded the two different entries he is charged in said citation with having recorded contrary to the court's command. But he admits that he had refused continually to comply with the orders of respondent, as judge of said court, in respect of the forms in which the proceedings of the court should be recorded and that he had refused to comply with a body of rules the court had prescribed to regulate the recording of entries. For the clerk's disobedience in refusing to record the particular entries set out above and by the respondent directed, and substituting other entries not directed by the respondent, the proceeding in contempt sought to be prohibited was commenced by a citation issued by respondent to relator, requiring the latter to appear before the former as judge of said Johnson County Circuit Court and show cause, if any there was, why relator should not be punished for contempt. Thereupon relator applied to this court for the writ of prohibition, and pursuant to his application a preliminary rule was issued, commanding respondent

to appear here and show cause, if any he had, why the writ should not be granted.

The petition of relator states that, on September 3, 1917, and during the June term of said circuit court, respondent promulgated a series of rules and orders, and instructed relator, as clerk, to spread them on the records of the court; which direction relator complied with, and said rules and orders were duly recorded in Volume 38 of said records, commencing at page 296 and ending on page 315; that is, on nineteen pages. Said rules and orders are recited in full in relator's petition, but they are too long to be copied and must be described rather than recited or epitomized. They began with the statement that the object of the court in promulgating them was to procure uniformity, regularity and accuracy in transacting the business of the court and to promote economy, simplicity and efficiency. To this end nearly one hundred forms for entries to be used in recording various proceedings are prescribed: the convening of court; opening the term; excusing petit jurors and grand jurors; impaneling grand juries; filing of answer by one defendant; filing separate answers for several defendants; of joint and separate answers; the filing of a demurrer to a petition by one defendant, or by several defendants; of a demurrer to an answer by one or several plaintiffs; for an order sustaining a demurrer; an order for leave to plead; the filing of motions; sustaining motions; overruling motions, etc. etc. Those forms relate to matters occurring in the progress of a case and leading up to the trial. But there are forms prescribed for more important matters, such as granting a change of venue and for various judgments, to-wit, for the plaintiff by default; for the plaintiff when a jury is waived and the trial is by the court; when a jury is waived, a court trial and a finding for the defendant; when there is a jury trial and verdict for the plaintiff, or a jury trial and verdict for the defendant; when a jury trial is started and adjourned from day to day and the

trial resumed; a judgment in a divorce case on personal service and default by the defendant; judgment in the like case for the plaintiff with custody of children awarded; when the defendant defaults and divorce is granted on personal service with restoration of the plaintiff's maiden name; default by defendant and a divorce granted on service by publication with restoration of plaintiff's former name (it is this form which relator refused to follow in recording the judgment in the case of Georgia Scott against Vernon Scott); judgment in a suit to quiet title on service by publication to unknown defendants; judgment on a plea of "guilty" in misdemeanor cases, and on the same plea in felony cases, etc. Two forms are prescribed in the rules for entries of minor proceedings happening during the course of a case; a short form, which is to be entered in the journal of the proceedings of the court on the day when the particular act occurred, and the long form, which is not written out on the records of the day, but is contained among the aforesaid forms prescribed by the rules of court and recorded with the rules in Book 38 on some page between pages 296 and 315. The Journal entry ordered in the case of Laura L. Maupin against Southern Surety Company: "Defendant by attorney files answer," is an example of the short form for entries in the course of a case. The full entry of that filing would be found somewhere on one of the aforesaid pages of Volume 38 and would read: "Now at this day comes the defendant by attorney and files his (or her or its) answer to plaintiff's petition in this cause."

At the beginning of the journal record of each day's proceedings, the clerk is required to write these words:

"The following records are written in accordance with rules and order of Court of Sept. 3, 1917, as shown in Book 38, beginning at page 296, which rules and orders are made a part of said record of this day."

Two forms are likewise provided for the more vital entries of judgments and the like—a brief one called "a representative form" and another called "a full form." The brief or representative form of a judgment is the one the rules require to be entered on the record of the proceedings of the day when the judgment is rendered, with a notation stamped after it, which the clerk is required to make in every instance, that the true and complete record of the judgment will be found under a certain heading in Record Book 38 on a stated page. We may illustrate by the representative and the full forms in the Scott divorce case. The representative form, the one recorded at the time the judgment is pronounced, is shown in the form designated as "A" supra. The full form for said judgment would be found, as is stated in the above representative form A, in Record Book 38, page 311, to-wit:

"Full form: (Divn. 2) Heading Dvn. 2 (a)

"Now at this day comes the plaintiff herein in person and by attorney, and makes proof of the publication of summons to defendant as required by law, and the defendant, though duly summoned herein, comes not, and though solemnly called, makes default. And this cause being now called for hearing, is taken up, and submitted to the court upon the petition, proofs and the evidence of credible witnesses. And the court after seeing, hearing and duly considering the same, doth find: That defendant has been duly served with process herein by publication of notice of this suit and all the objects thereof for four weeks successively in (b) a weekly newspaper published and circulated in the County of Johnson in the State of Missouri, the last insertion thereof being more than thirty days before the first day of this term of this court. That said defendant has failed to appear, answer, or plead herein, but has wholly made default and plaintiff's petition stands as confessed by said defendant.

"That plaintiff was lawfully married to defendant; that (c); that plaintiff is the innocent and injured party; that plaintiff's former name was (d). That plaintiff has resided in the State of Missouri one whole year next before filing of the petition in this cause; it is therefore ordered, adjudged and decreed by the court that the bonds of matrimony contracted and existing by and between plaintiff and defendant be and are hereby set aside and for naught held and that plaintiff be and hereby is divorced from defendant and her former name of (d) be restored to her, and that plaintiff pay the costs of this suit."

It will be seen that a complete judgment must be made up by reading into the empty spaces in the full form denoted by the bracketed letters (a), (b), (c), (d) the matter contained after said letters in the representative form. In the blank space (a) in the full form must be read the title of the cause, as though it were written there, namely, Georgia Scott v. Vernon Scott, No. 9356; into the blank space (b) must be read, as though written there, the name of the paper in which notice of publication was made, to-wit, Johnson County Democrat; into space (c) must be read the cause for which the divorce was granted, to-wit, defendant has absented himself without reasonable cause for more than one year; into space (d) must be read the former name of the plaintiff, to-wit, Georgia Ann Hightower. If a transcript of the judgment were to be certified, then the matter set out after the bracketed letters in the representative form would be inserted. In other words, the empty full form, to speak paradoxically, is filled up by incorporating in its blanks by reference to them in the short form, matter contained in the latter, thereby making the blank general form the complete judgment in a particular case.

Forms for other judgments are similar to the one prepared for a divorce decree, such as was rendered in the Scott case, but some are more intricate, notably the one to quiet title. Near the middle of the aforesaid

rules (as spread of record in Book 38 at pages 296 to
315) and immediately before the representative and
full forms for judgment, is a long explanation of how
they are to be used and understood, which describes
the representative and full forms; speaks of the alter-
natives in them to designate the parties to an action as
to whether there are one or more, and the gender of
the parties, with appropriate verbs and pronouns; then
states how the complete judgment is to be made up
by using the representative and full forms in the man-
ner already described, and that the judgment thus
expressed shall constitute the judgment of the court,
"the court having regard for and contemplating such
full form with the alternatives used and blanks filled as
aforesaid as the true judgment, action or proceeding
of the court when so directing the same to be expressed
and entered in such representative form." The clerk
is then instructed to stamp after each judgment the
notation given already as to where the complete record
is. (See form of said notation after the Scott judg-
ment, supra.) The clerk is likewise instructed to copy
the full form with alternatives and blanks filled from
the representative forms in certifying copies of the
record. As stated, relator in his petition admits that
he refused to observe the court's said rules and forms,
and that ever since their promulgation he has kept
the records in the customary way; extenuating his
disobedience by averring the rules and orders are void
and beyond the power of the respondent to promul-
gate, because they are "vague, unintelligible, contra-
dictory and confusing," and not in the English lan-
guage; that to follow them would render it impossible
for relator to perform his duties as clerk, make proper
indices of proceedings or certify copies of judgments
and records; that many entries affect titles to real
estate and must be recorded in the office of the Recorder
of Deeds where the land lies; that if made in the
forms prescribed by the rules it would be impossible
to certify them; and so with transcripts of judgments

requested for actions in other States; that relator would be liable on his bond for not keeping the records as required by law; that the property rights and the status of residents of the county and others, and the liberty of persons, depends on judgments being entered in proper form and in the English language as the law requires, without hieroglyphics, symbols, key letters or codes and with no abbreviations except those commonly used; and that thus relator and his predecessors have kept the records for many years.

In his return to our preliminary rule, respondent denies the rules and orders aforesaid require the clerk to record the proceedings of the court in any other than the English language, or to use hieroglyphics, keys, symbols or codes, or abbreviations other than such as are in common use, or that the clerk could not keep properly the records, or certify them, if writen according to said rules; denies the rules and orders are in contravention of law, avers the clerk is a ministerial officer and bound to enter the judgments and orders of the court as directed by the judge; avers also that the particular entries ordered to be made in the case of Scott against Scott are in the English language, unabbreviated, and that the judgment entered by the clerk was not the judgment of the court but of the clerk, and therefore the latter officer was cited for contempt.

The citation to relator to show cause against punishment for contempt, is attached to relator's petition as an exhibit; and it recites that on October 15, 1917, relator was directed by the court to make the aforesaid entry in the Maupin case in conformity with the said general rules, and that relator violated the direction, and that on October 9, 1917, relator was directed to record the judgment in the Scott case in the representative form as we have set it out, but relator, in violation and disregard of the court's direction and in defiance of its authority, recorded another entry (that

is, a judgment in the form commonly used in divorce cases).

Relator denies in his petition the validity of the entire system of forms of entries prescribed by the rules the' respondent put in force, and affirms that, because of their invalidity, his persistent refusal to use the forms was not a contempt; therefore the proceeding against him should be stayed. This defense of relator's disregard of the rules, omits to notice the definite charge in the citation that on· specified days of court respondent, as judge, explicitly ordered relator to record two entries which he refused to do, and, instead, recorded different entries, one of these being a judgment the court never gave. The contempt alleged is those acts, the court's system of rules and forms being only incidentally involved. If the system had not been promulgated, though in that event relator might have disobeyed the court's orders on the days mentioned, disobedience would have been neither more nor less a contempt because of the non-existence of the rules.

The primary question presented in the present case, as in every one brought to prohibit a court from acting, is whether the subject-matter of the proceeding in which judicial action is apprehended, lies within the court's jurisdiction, or, if it does, whether the particular act to be stayed will exceed the jurisdiction. [State ex rel. Hofman v. Scarritt, 128 Mo. 331, 338.] The circuit courts of this State have jurisdiction of matters of contempt of court by the common law, and also by a statute conferring it as to some acts of contempt, among which is resistance wilfully offered by any person to the lawful orders or process of the court. [R. S. 1909, sec. 3881; State ex rel. v. Bland, et al., 189 Mo. 197.] Courts ·of record of general jurisdiction always have had power to punish as for contempt, their officers, including clerks, for disobeying a judicial order, or otherwise obstructing the administration of justice, or offending the dignity of the court.· If the

offense is committed in the presence of the court, by statute and by the common law, the offender may be punished summarily. [R. S. 1909, sec. 3883; In re Clark, 208 Mo. 121, 148.]

A contempt like the one relator is charged with was that of a clerk who refused to record the auditing and allowing by a County Commissioners' Court, of a claim against the county, although twice commanded by the court to make the entry. For this disobedience he was removed from office and another person appointed in his place. Afterward he refused to obey an order of the court to turn over the books and papers of the office to the appointee, and for this refusal was committed to jail. Whereupon he procured a writ of *habeas corpus* to be discharged. The Supreme Court held the Commissioners' Court had the power, like other courts, to punish for contempt; and although the prisoner was discharged, this was because he had been sentenced for the refusal, after he was no longer an officer, to surrender the archives; for which offense a special statutory remedy existed and the Commissioners' Court had no jurisdiction. But on the general subject of the authority of the court over its clerk, the opinion said the power to punish the clerk for contempt in refusing to enter the order was unquestionable; that it was not the province of such officer to determine what orders should or should not be entered, or what claims could be allowed; that if one was allowed without authority of law, there were proper remedies, but none by way of a refusal of the clerk to record the allowance. [Ex parte Thatcher, 7 Ill. 167.]

A Supreme Court clerk having refused to obey the orders of one of the justices, for the reason that the commission and oath of office of the justice had not been filed in the clerk's office, he was held to be in contempt, imprisoned and removed from office. [Territory v. Clancy, 7 N. W. 580; and see to the same effect, State v. Simmons, 1 Ark. 265; Matter Contempt Two

Clerks, 91 Ga. 113; Northcutt v. State, 158 S. W. (Texas) 1004.]

The position of the relator that his general disregard of the court's rules regarding entries constituted no contempt, rests on these alleged facts: that the forms prescribed by the rules were not in the English language, with only such abbreviations as are in common use, and that the forms and rules are unintelligible. This theory, in its total condemnation, brings into view the full scope of the controversy between the judge and the clerk; but as said above, loses sight of the precise question for decision in the case at bar, which involves no more than whether the relator may be proceeded against for disobeying two particular orders of the court. Before taking up that question, we remark, what is indeed patent, that the short entry in the Maupin case and the "representative" form of judgment in the Scott case ordered to be recorded, are both in the English language, as the statutes say all records must be. [R. S. 1909, sec. 3860.] We remark further, that no abbreviation occurs in either, except the letters "Dvn" after the words "Full Form" and "Heading," said abbreviations being intended, as we know from the brief of respondent, to indicate the division of the rules in Record Book 38, where the blank full form for the judgment would be found. The statutes, in the section just cited, permit the use in keeping judicial records, of abbreviations commonly used, but no others; and the law requires a judgment, for it to have binding force, to be intelligible. [Freeman, Judgments (4 Ed.), sec. 47; Moody v. Deutsch, 85 Mo. 237, 244.] Whether "Dvn" is an abbreviation commonly used, and whether the judgment directed in the Scott case is intelligible, would be questions for judicial determination if raised in a case where they were material. As regards court rules, it is true, as relator contends, that they must not be arbitrary, unreasonable, contrary to a statute, or of a nature to deprive a party of a legal right. [15 C. J. pp. 902,

903; State ex rel. v. Withrow, 132 Mo. 500, 522; Ibid, 376, 382; Pelz v. Bollinger, 180 Mo. 252, 261.] And, as was decided in the three cases cited, an appellate court will relieve a party injured by an unjust or unlawful rule, if "a very clear case of abuse of discretion" is made out, to quote from the opinion in the Pelz case. We say the questions of the court's power to use the abbreviation "Dvn," of the intelligibility of the ordered entries, and of the legality of the rules prescribed by respondent, would be for judicial decision in a proper case; but we do not say they would be for decision by the clerk in any case.

It is unnecessary to determine whether or not, if the clerk of a court were ordered by the judge to record a judgment in another than the English tongue, or to record for a judgment a collocation of utterly meaningless words, "signifying nothing," the clerk would be justified in refusing. Such an instance is not before us, nor likely ever to be. The entry directed in the Maupin case is clear, if not complete, and the worst that can be said as to the intelligibility of the one in the Scott case is that persons might differ as to whether it can be understood.

A more serious objection seems to be that the representative form does not purport to be complete in itself, but refers to another record which, were the point ever raised, might be held, we do not say would be, *dehors* the case in which the judgment was given.

If we are right in those conclusions regarding the entries, can it be held the relator's disobedience was so plainly proper, so plainly not a contempt, that the court exceeded its jurisdiction in citing him? It is conceivable that a judge might proceed against an officer, or a private person, for contempt in doing something so palpably innocent as to warrant a superior court's interference by its writ of prohibition; just as it is conceivable that a court might render a judgment so utterly barren of meaning as to excuse the clerk from entering it. We say nothing concerning such

possibilities.   As the matter in hand stands, the ques-
tion of whether relator was in contempt, is for decision
according to the opinion of the circuit court, subject
to examination, so far as the law permits, in a superior
tribunal.   [State ex rel. Hofman v. Scarritt, 128 Mo.
331.]

Pursuing the matter further, perhaps needlessly,
we will inquire at this point as to the power of a judge
over the entries in the record of the proceedings of
his court, and the correlative duties of a clerk.   A
judge's supreme responsibility is in respect of the or-
ders and judgments he makes; no one else can pro-
nounce them, or amend, alter or impair them after they
are given, except a court of review: this is the law
by an express statute in which clerks are specifically
mentioned.   [R. S. 1909, sec. 1863.]   The judge knows
best what judgment he gave and should have authority
to see that it is entered so the record will express and
preserve it precisely as rendered.   For this and other
reasons, every judge of a court of record in the State
is charged with the special duty of examining into
and superintending the manner in which the rolls and
records of his court are kept, the entries made, and
with proceeding against the clerk as for a misdemeanor,
if he fails to observe the law.   [R. S. 1909, sec. 3859.]
This court has said a judgment is the act of the court,
its entry in the record the act of the clerk, the first
being judicial, the second ministerial; and that though
a judgment derives its force from its rendition by the
court, yet one given by a court of record can only be
proved by the record.   [State ex rel. v. Henderson,
164 Mo. 347.]   That being true, the importance of hav-
ing the record contain exactly the judgment given, is
apparent, as is the necessity for the judge's supervision
and control to insure an accurate record.   Speaking
upon this point the Supreme Court of California said:

"The records of the courts are necessarily subject
to the control of the judges, so far as may be essential
to the proper administration of justice. . . . Legis-

lation which could take from its control its records, would leave it impotent for good, and the just object of ridicule and contempt. The clerk, it is true, is a constitutional officer—not subject to appointment or removal by the court—but subject, in the control of the records, to its orders,'' etc. [Houston v. Williams, 13 Cal. 24, 28.]

In People to use of Howard v. Cobb, 10 Colo. App. 478, 483, a clerk and the sureties on his official bond were sued for a deposit of money left with him, and which he entered on the record of the court as having been paid to him as clerk, when in fact the court had made no order for its payment to him in that capacity. The court said, regarding the entry and its effect:

"An unauthorized entry by the clerk is no part of the records of the court. An order by virtue of which money is paid into court, must come from the court itself, and an entry by the clerk of money as being in court, no matter in what form or in what book, without such order is nugatory. . . . Orders, judgments and decrees are made and rendered by the court in the exercise of its judicial functions, and these cannot be delegated.''

In Mayor of Baltimore v. County Comm'rs, 19 Md. 559, the case was to recover fees paid by the plaintiffs in a criminal case for which it was asserted the county was liable. The transcript showed these fees had been taxed as costs by the clerk of the court where the criminal cases were tried, but did not show they had been allowed by the judge of said court. It was contended the clerk was the hand of the court and every entry must be presumed to have been made by order or in the presence of the judge. The court said as to this at page 564:

"The clerk is the amanuensis, it is true, of the court, but he must profess to act by the authority of the judge in making his entries of the proceedings, to give them validity. The awarding of costs is the act of the court, their taxation or computation, according

to the list of fees prescribed, is a duty imposed by law on the clerk, subject to the supervision of the judge; but the allowance of compensation to an officer of the court, in addition to the sum allowed by law (and not to exceed a certain sum, as the judge may deem just and proper, is a judicial, not a clerical act, which must be evidenced by some order entered under the authority of the judge, and purporting to be so."

A text work of merit thus states the rule:

"In recording and making up the proceedings of the court he (viz. the clerk) may be said to act as its (viz. the court's) amanuensis and subject to its control." [11 C. J. 887, citing 7 Cy. L. & P. 219, 223.]

The powers and duties of a clerk are as well settled as those of a judge. We have seen that the statutes forbid him to alter or impair a record, and they expressly command him to "record the judgments, rules, orders and other proceedings *of the court*" (Italics ours). [R. S. 1909, sec. 2685.] The authorities are uniform in declaring that in performing this duty he acts ministerially and subject to the court's control. [11 C. J. 887; K. C. Pump Co. v. Jones, 126 Mo. App. l. c. 540; LaCoste v. Eastland, 117 Cal. 673; Ex parte Brown, 166 Ind. 593, 602; Vanderkarr v. State, 51 Ind. 91; Comstock v. Gage, 91 Ill. 328; Baltimore v. Baltimore Co., 19 Md. 554; Hirsh v. Twyford, 40 Okla. 220, 223:] In the case last cited the rule is thus stated:

"The clerk's duties are ministerial and largely clerical. He is the arm of the court for which he is clerk, and it is his duty to make a record of the proceedings, orders, judgments and decrees of his court, but in so doing he acts as the amanuensis of his court and subject to its control. Record entries are valid only when made under the judicial sanction of his court."

An appellate court of this State said in the first case cited above:

"A clerk is a mere ministerial officer, the hand of the court, and has no authority to enter a judgment

not pronounced by the court. His entry of a judgment in the records is designed to stand as a perpetual memorial of the court's action, but the judgment itself 'is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy as ascertained by the pleadings and verdict.' The entry by the clerk of a judgment the court did not render was a nullity." [126 Mo. App. l. c. 540.]

This excerpt is taken from Ling v. King, 91 Ill. 573:

"The clerk, in all cases and in all his official acts, whether in term time or in vacation, performs them as a ministerial officer. He so acts in entering up a judgment in term time, under the direction of the judge, who considers and decides."

It is clear from the authorities we have cited and quoted from, that relator's refusal to obey the orders in question, cannot be regarded as necessarily devoid of the elements of contempt.

It may be fair to assume from the pleadings that respondent, if no writ goes, will find relator is guilty and punish him; but as yet no finding has been made, nor a step taken toward one since the preliminary rule issued. But prohibition is not the mode of relief, if relator was not in contempt; at least unless the alleged acts could not constitute the offense. In the case of State ex rel. Hofman v. Scarritt, supra, that relator sought to prohibit a proceeding for contempt which the respondent Scarritt, as judge, had commenced because of Hofman's garnishing a debtor of a corporation in the hands of a receiver appointed by the judge. This court decided the circuit court had power to punish Hofman as for contempt on a sufficient showing that one had been committed, saying the question raised called for the exercise of judicial power and the circuit court was vested with authority to decide it in the first instance, the relator having the right to a review under a different writ; meaning, as a citation made in the

opinion shows, the writ of *habeas corpus*. We quote these comments from the opinion:

"The writ cannot rightly be employed to compel a judicial officer, having full jurisdiction over the parties and a cause, to steer his official course by the judgment of some other judge, or to substitute the opinion of another court for his own in dealing with topics committed by the law to his decision. [In re N. Y. Steamship Co. (1895), 155 U. S. 523.]

"The circuit court in the case in hand cannot, on the showing now made, be required to refrain from deciding whether or not Mr. Hofman has been guilty of a contempt of that court. He has been lawfully brought before the court to answer that charge; and it is not our function, at this stage of the proceedings, to substitute our opinion for that of the circuit judge, to whom the law has given authority to first decide the question now sought to be submitted here." [128 Mo. l. c. 338, 339.]

In State ex rel. Morse v. Burckhartt, 87 Mo. 533, 538, in expounding the same doctrine, the court said that if a matter falls within the jurisdiction of a judicial tribunal, it may be passed upon there and an erroneous decision cannot be prohibited; for a court entrusted with jurisdiction may exercise it according to said court's judgment and as the oft repeated phrase reads, by deciding wrong as well as by deciding right. In Delaney v. Police Court, 167 Mo. 670, 672, the plaintiff claimed he had been denied a jury trial though entitled to one, and asked prohibition against the enforcement of the judgment. The writ was denied him, with the comment that if all he contended for was conceded, it amounted only to a wrong ruling, for the police court had jurisdiction to try the case, and while its procedure may have been erroneous, it could not be corrected by prohibition. It sometimes happens that courts, through mistakes of judgment, give decisions contrary to statutes, but if it has ever happened that

State ex rel. Caldwell v. Cockrell.

a writ issued to *prevent* the mistake, we do not know the case.

Both parties have expressed the wish that we decide the validity of the rules of court and the various forms in question. It would be impossible for us to undertake that task, for, as stated, there are numerous forms covering sundry matters, and, on an examination some might be deemed good and some bad; and their validity has not been briefed or argued. There is another reason why we should not pass on them: what we would say would carry no authority and might cause embarrassment later if a case arose wherein the legality of some form was involved. Moreover, for aught we know, titles may have been determined, divorces granted and other matters disposed of in the Seventeenth Circuit with the forms of judgment prescribed in the rules, used in writing up the record. In that event titles to property would be clouded and the status of persons disturbed were we to say the judgments were invalid; whereas were we to take the other view, and say that in our opinion as lawyers they are valid, the statement would be a mere *dictum*. A reputable text-writer on the subject of judgments, has said the forms in use at common law answer so well the requirements of accuracy and brevity that little or nothing can be gained by departing from them. [Freeman, Judgments (4 Ed.), sec. 48.] That doctrine is sound, we think, and its observance tends to stabalize judgments and to inspire confidence in their stability.

Our preliminary rule is discharged and the writ of prohibition denied. All concur; *Walker, C. J.*, concurs in separate opinion; *Graves, J.*, concurs in the result in separate opinion in which *Blair* and *Woodson, JJ.*, concur.

WALKER, C. J. (concurring).—That the relator is not entitled to the writ prayed for, my learned brother has reasoned well and I concur in his conclusion. During the argument, however, both parties, while admitting

it to be collateral to the main issue, urged that we express our opinion as to the propriety of the respondent's course in adopting and requiring the use of the forms of record entries, whether interlocutory or final, disclosed by the pleadings. This request will serve to explain my reason for adding to my concurrence in the majority opinion such suggestions as I may offer in regard thereto and, I hope, free it from an air of impertinence.

The forms of orders or interlocutory entries required by respondent are not definite and complete in themselves as to the matters ruled upon; and the forms of the judgments following such orders are lacking in their completeness, and reference is rendered necessary to the former orders to determine not only what the judgments are based upon but their nature and extent as well.

When a judgment is thus entered its validity may possibly be upheld by piecing together the former orders and entries, but this is a course not to be commended. This course, if it does not render a judgment invalid for indefiniteness, which we do not now decide, at least renders it so irregular that instead of terminating it tends to provoke further litigation. A judgment has been tersely termed to be the last word in a judicial controversy (Orchard v. Wright-Dalton Store Co., 225 Mo. 414, 20 Ann. Cas. 1072), or, as has been said with even more precision, it is "the conclusion of the law upon the matter contained in the record" (State ex rel. v. Muench, 217 Mo. 124, 129 Am. St. Rep. 536.) The entries or orders made during the progress of a trial do not of themselves constitute a part of the judgment as they are attempted to be made in the forms prescribed by the respondent, but are intended to record the action of the court as to the particular phase of the case then under consideration and may properly be used by the clerk if necessary to accurately make up his record. The completeness and finality of a judgment, therefore, should be made to depend upon its

own terms, free from any reference to former orders in the case, however pertinent when made they may be to the regularity of the proceeding. [State ex rel. Green v. Henderson, 164 Mo. 1. c. 359, 86 Am. St. Rep. 618.]

These suggestions but embody in the abstract the requisites of such a judgment as has been recognized in our procedure and approved in our rulings from the beginning of our jurisprudence. A compliance with them is hallowed by precedent and a departure therefrom cannot be otherwise than fraught with uncertainty if not with danger. An observance, therefore, of the ancient landmarks is in this regard not to be ignored.

GRAVES, J. (concurring).—I concur in the result of the majority opinion in this case. I agree to the proposition that a judge of the circuit court may direct his clerk to enter a judgment in a given form, and it thereupon becomes the duty of the clerk to so enter it. This on the theory that the judge controls the records of his court.

But in this case both sides ask that we pass upon the propriety of the judgments now being entered by the respondent. To save future erroneous judgments, this request should be granted, although not strictly within the purview of the instant case. If evil exists, the continuance of it will work more harm, than a prompt suppression of it. If the judgments being entered are bad, the continuance of the practice will but add to the number of bad judgments. So that in view of the earnest insistance of both sides (including a letter from respondent since the submission of this case, a part of the files under our rule) I think the real question sought to be determined should be determined. In my judgment the learned respondent is in error as to what constitutes a valid judgment under our statutes. The statutes contemplate that the records of the day during which the judgment is entered should show a judgment within the terms of the statute. The judg-

ments presented here do not conform to the statutory requirements. So, whilst I agree that respondent should not be prohibited from trying the clerk for contempt (because respondent can dictate the records of his court), yet I am loath to believe that respondent desires to order irregular and invalid judgments in his cases. On this subject he asks our judgment, and I, personally, feel constrained to express my views now. This to the end that future complications may not be added to past complications. In my judgment the entry of judgment in the divorce case is bad, under our statute. The sooner this is known, the better it will be for respondent, and the litigants of his circuit. All such judgments as do not appear in full on the day's record do not meet the ends of the statute. Reference to rules and other forms, in my view of the law, does not make the judgment of the character in this divorce case good. I would rather hold now that what has gone before is bad, than to wait, and then have to hold that a whole term's work is bad. By what I have said, I do not mean that there is not sufficient written data, from which a valid judgment could be entered *nunc pro tunc*, but I do mean that the judgments here under review do not conform to the statutes. I take it, the respondent has asked for this ruling. For these reasons I can only concur in the result. *Blair* and *Woodson, JJ.,* concur in these views.