FARMERS EXCHANGE BANK et al. v. C. D. THOMPSON, Appellant, and A. G. KNIGHT, Trustee.

Division One, July 30, 1925.

1. **TRUST ESTATE: Sale Subject to Encumbrances: Descriptive Clause.** Words contained in the descriptive part of a decree authorizing the trustee to sell lands "subject to a mortgage given thereon by grantors conveying the foregoing lands to Herschell Bartlett in trust to secure the payment of a note and coupons in said deed of trust particularly described, and recorded," etc., being merely a part of the description of the lands and transcripts of the descriptions contained in the deed of trust, are not to be considered as directions as to how the lands are to be sold, and cannot be held to be a direction to sell subject to an existing encumbrance.

2. ————: Sale by Trustee: Equity of Redemption or Clear of Encumbrances: Naked Title. The declaration of trust conveyed to the trustee only the equity of redemption in lands encumbered by a deed of trust, and the decree of the court interpreting the instrument contained no specific direction as to whether the trustee should sell the equity of redemption only, or sell the lands clear of the encumbrance. The tract contained more than three thousand acres and was encumbered by a single mortgage for $150,000. The declaration of trust and the decree gave to the trustee wide powers; they enjoined on him the duty to "prevent as far as reasonably possible the lands from being sacrificed or dissipated by reason of the existing deed of trust." He first sold subject to the mortgage, and the sale was set aside by the court as inadequate. He then sold in parcels, to be clear of the encumbrance, and from the aggregate amounts bid he deducted the mortgage debt and reported the balance as the clear proceeds of the equity of redemption, and the sale was approved by the court. *Held*, that the procedure was but a method of selling the equity of redemption, was fully authorized under the broad powers conferred by the trust, and authorities to the effect that a trustee holding the naked title cannot on a sale of the property use a part of the purchase price to satisfy encumbrances, unless expressly authorized thereto in the instrument creating the trust, are not applicable to the situation; and the finding of the trial chancellor that the method employed by the trustee in making sale of the equity of redemption was the most practicable and the most advantageous that could have been adopted, is approved.

3. ————: ————: Jurisdiction: Possession: Writs of Assistance. A decree, interpreting the declaration of trust and adjudging that "the possession of all of said real estate be delivered" to the trustee by the maker on a certain date, "provided that if any real estate is sold under this trust by the trustee, then possession of such real estate so sold is to be delivered to the purchaser" by the maker on a prior date, gave to the court complete jurisdiction of the *res*, and no new right or title having intervened since the decree was rendered the court had power to employ necessary writs of assistance, in carrying out its orders and judgments approving the sales, to put the purchasers in possession of the lands sold, and to put the trustee in possession of the lands not sold..

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2999, p. 1014, n. 34. Constitutional Law, 12 C. J., Section 357, p. 859, n. 20, p. 860, n. 24; Section 1062, p. 1262, n. 91. Municipal Corporations, 28 Cyc. p. 978, n. 33; p. 981, n. 57; p. 982, n. 63; p. 991, n. 77; p. 994, n. 17; p. 995, n. 18; p. 1023, n. 29; p. 1169, n. 74, 75; p. 1233, n. 15; p. 1235, n. 32. Trial, 38 Cyc. p. 1531, n. 21.

Appeal from Grundy Circuit Court.—*Hon. Leonidas B. Woods,* Judge.

AFFIRMED.

*Bruce Barnett* for appellant.

(1)   The trustee undertook to sell these lands free and clear of the prior and superior deed of trust, so as to apply the purchase money first to the discharge of that deed of trust.   The decree provides exactly to the contrary.   (2)   Further, the said decree specifically directs how the proceeds of the sales shall be applied, namely: (a) to the payment of the expense of administering the trust; (b) to reimbursement of the creditors for money advanced for taxes and interest upon prior deeds of trust; (c) to payment of $14,399.52 judgment to Trenton Trust Co., (d) to payment of indebtedness of each and all of the plaintiffs, and (e) that the residue shall go to appellant.   These provisions of the decree directly prohibit the application of any part of the proceeds of any sale to the discharge of prior deeds of trust. (3)   Likewise the declaration of trust contains the same provisions as those of the decree above referred to. (4)   And the plaintiffs are bound by the provisions of that decree, because parties to that record, and the Grundy Land Company, which purchased the 3,291 acres sold, is likewise bound because it is and was *alter ego* of the plaintiffs and their instrumentality, and nothing more, as shown by undisputed evidence.   (5)   Even if the declaration of trust and the decree had been silent upon the question as to how the lands should be sold by the trustee and as to manner of applying proceeds of sales, no part of the proceeds could be applied to the discharge of the prior deed of trust to Bartlett, trustee. Jones v. Sheppard, 145 Mo. App. 470; Stark v. Love, 128 Mo. App. 24; Scott v. Shy, 53 Mo. 278; Schmidt v. Schmidt, 57 Mo. 135; Hooper v. Castetter, 45 Neb. 67; 27 Cyc. sec. 1497 and note 97; 2 Jones on Mortgages,

sec. 1929. (6)   If appellant is right in his main conten-
tion, it follows of course that the court erred in ordering
writ of assistance to the trustee, because the sale brought
more than sufficient money to discharge all of appellant's
debts and other charges against him, and instead of
placing the trustee in possession of the remaining lands,
the same should have been ordered to be conveyed back
to appellant. (7)   Even upon the theory and conten-
tion of respondents, namely, that the lands were prop-
erly sold upon the terms of applying the proceeds of the
sale first to the discharge of the prior deed of trust, this
cause would have to be reversed as to the granting of
writ of assistance to Grundy Land Company for the rea-
son that there was no evidence that said company as pur-
chaser either paid the purchase price to the trustee or
that it has paid off the Bartlett deed of trust. Obviously
they ignored the fact that in any event appellant would
be entitled to be released from his personal liability up-
on the note secured by said deed of trust.

*A. G. Knight, pro se; H. J. Bain* for respondent cred-
itors.

(1)   Appellant's contention that the decree specifi-
cally provides that the lands should be sold subject to the
encumbrances thereon, is not warranted by the decree or
the special paragraphs referred to. (a)   All the pro-
visions of said decree, and every part thereof, must be
looked to as in the interpretation of other instruments,
to determine the true intent of the parties as to what
powers are conferred upon the trustee by the decree.
Perry on Trusts & Trustees (6 Ed.) sec. 473; Guinn v.
Pickett, 22 Miss. 77; Kerr v. Verner, 66 Pa. St. 326.
(b)   Under the deed, without more, as owner in fee, the
trustee could have paid all liens, and sold the land, or
what amounts to the same thing, agreed to a sale for
full value of the lands clear, and accounted for the pro-
ceeds, after deducting such liens. (c)   The declaration
of trust, which is a part of the decree, and must be looked

to in gathering the intention of the parties, leaves no room to doubt the power of the trustee to pay off and discharge all liens, out of the proceeds of the property, or to pay off before sale to prevent foreclosure or for the best interest of all concerned, or to borrow money on the property (which implies power to pay off in order to borrow) and in fact to make any payment deemed necessary for the preservation of the property and the carrying out of the trust. (2) "The sale must be confirmed without change of terms, or confirmation must be refused. The court has no power to modify the terms of the sale, and confirm the sale as modified." 24 Cyc. 33; Re Receivership of Sugar Co. v. Hewitt, 22 Idaho, 328, 43 L. R. A. (N. S.) 671, note 672; 35 C. J. par. 122 (3), p. 79, and notes 33 and 34. (3) The assumption by appellant, that "if the declaration of trust and the decree had been silent upon the question as to how the lands should be sold by the trustee and as to manner of applying proceeds of sales, no part of the proceeds could be applied to the discharge of the prior deed of trust to Bartlett" is incorrect as an abstract statement of law, and the authorities cited do not sustain it. If the principle contended for was sought to be applied to a trustee under an ordinary or naked deed of trust, the authorities would be in point. But, here the sale was had under a decree in equity, partaking and in fact being a judicial sale, requiring confirmation by the court. Bechtel v. Weir, 15 L. R. A. (N. S.) 549; Humboldt Sav. Assn. v. March, 136 Cal. 321; Freeman on Void Judicial Sales, sec. 21; Emery v. Vroman, 19 Wis. 689, 88 Am. Dec. 726; Summerville v. March, 142 Cal. 554, 100 Am. St. 145; Miller v. Grudgeon, 16 Okla. 337, 8 Ann. Cas. 739. (4) The proceeds of the sale is pledged to its payment. The trustee asks to pay it out of the proceeds of the sale, and when it is finally decided he may do so, it will be done, and if not done the court can enforce it by proceedings as for contempt, and attachment. Camden v. Mayhew & Co., 129 U. S. 73, 32 L. Ed. 611; Craffet v. William, 114 Mo. 106:

Hall v. Giesing, 178 Mo. App. 233; 35 C. J. 122, sec. 222 (3).

RAGLAND, P. J.—This is an appeal from a judgment of the Circuit Court of Grundy County approving and confirming sales of land made by a trustee and awarding two writs of assistance: one to put the vendee in possession of the lands sold; the other to put the trustee in possession of the lands not sold and constituting the remainder of the trust estate.

On September 7, 1921, defendant Thompson owed approximately $150,000 to unsecured creditors who were demanding payment and proceeding to put their claims in judgment. He owned several thousand acres of land. Some of it was located in the states of Colorado and Kansas; the remainder in Grundy, Harrison and Livingston counties, Missouri. Practically all of it was heavily encumbered and foreclosure sales were pending. Being unable on account of financial embarrassment to prevent sacrifices of his property through execution and foreclosure sales, Thompson effected an arrangement with his unsecured creditors, the plaintiffs in the suit of which the present proceeding is the aftermath, whereby they were to advance sufficient funds to prevent forced sales and he was to convey all of his property upon certain trusts. Pursuant to such arrangement they advanced in all $34,000 and he conveyed his lands, by general warranty deeds, to defendant A. G. Knight, who contemporaneously therewith made and executed a written declaration of trust. Subsequently a controversy arose between plaintiffs and defendants as to the extent of the trustee's authority to make sales of the land so conveyed to him and as to who was entitled to the possession and the rents and profits pending such sales. Thereupon the plaintiffs filed their bill in equity praying the court to construe and enforce the trust. Defendants, Thompson and Knight, filed no counter-pleading. but appeared in court and consented that a decree be en-

tered.    The decree so entered, in so far as it has any
bearing on the present controversy, was as follows:

"The court doth consider and find that by the terms
of said trust the trustee therein named, A. G. Knight, has
full and complete power and authority as trustee to sell
and convey all of the real estate so conveyed by C. D.
Thompson to A. G. Knight as trustee remaining in the
hands of said trustee.  That said real estate may be sold
by the trustee in whole or in parts; that said real estate
may be sold all at one and the same time, or it may be
sold in parcels and at different times.  That all of the
sales of said real estate or any part thereof by the trus-
tee under this trust shall be at public auction upon notice
thereof; that said real estate may also be sold by the
trustee as a whole or in parts at private sale upon the
consent of the defendant C. D. Thompson; that the no-
tices of the sale of any of said real estate or any part
thereof shall be published in some newspaper printed
and published in the county in which the land is situate,
and such publication shall be for a period of not less than
four weeks prior to the day of sale, and said publication
shall describe the land to be sold, giving the time, date
and place of sale; that all sales made by the trustee un-
der the trust herein shall be at the court house in the
county in which such lands are situated.

"C. D. Thompson shall have the right to rent and
manage said real estate, but the trustee, A. G.
Knight, is entitled to have the rents and profits paid
him by C. D. Thompson, and same shall be paid the trus-
tee by C. D. Thompson to be applied as other proceeds
coming into his hands, said rents and profits to be paid
or transferred not later than March 1, 1923.  That the
possession of all of said real estate to be delivered to
A. G. Knight by C. D. Thompson on March 1, 1923, pro-
vided that if any real estate is sold under this trust by
the trustee, then possession of such real estate so sold is
to be delivered by C. D. Thompson to the purchaser Feb-
ruary 28, 1923.  .  .  .

"The court doth further consider and find that the trustee herein be authorized to borrow money with which to pay the interest, taxes or other necessary charges and expense that may be necessary to save and preserve such part or parts of said real estate as may be deemed necessary by the trustee from being sold under any mortgage, deed of trust, judgment execution or lien, or for taxes, or on any execution sale, and all sums so expended by the trustee shall be a prior claim and be first paid out of the funds coming into the hands of the trustee from the sale of said real estate, or from any rents or profits or from any other source whatever; it is further adjudged by the court that the trustee in this trust shall prevent as far as reasonably possible the lands from being sacrificed or dissipated by reason of existing mortgages and deeds of trust, until March 1, 1923. . . .

"The court doth further consider and find that the trustee herein be required to make sale or sales of the real estate, or so much of said real estate as remains in the hands of the trustee, and execute proper conveyances therefor to the purchaser or purchasers of the real estate so sold and conveyed, which said real estate so to be sold by the trustee is described as follows: [Here follow descriptions.]

"The court doth further consider and find that when sufficient of said real estate has been sold to pay all of the claims, matters and things required to be done in the next succeeding paragraphs, such sales are to cease.

"That out of the proceeds of all sales of land under this trust by the trustee, and out of all moneys coming into the hands of the trustee from the rents and profits and from any and all other sources, if any, the trustee shall pay:

"First: . . . all charges and other expenditures of whatever kind and character necessary in the administration of the trust herein set out.

"Second: All claims for money advanced by the trustee or by the plaintiffs . . . necessary to conserve or preserve said property to the creditors and C.

D. Thompson, and prevent the same from being sold, dissipated, sacrificed or lost.

"Third: To the payment in full of the judgment of the Trenton Trust Company, . . .

"Fourth: To the payment of the indebtedness of each and all of the plaintiffs, as set forth in this decree, as follows: . . .

"Fifth: That the remainder of all moneys and all land left in the hands of the trustee be conveyed, transferred and assigned to C. D. Thompson, his heirs, assigns, or personal representatives, as the case may be."

Under the caption, "Description of Lands," eight separate tracts are described, the concluding parts of the several descriptions, respectively, being as follows: (1) "Subject to a mortgage given thereon by grantors conveying to Herschel Bartlett in trust to secure the payment of a note and coupons in said deed of trust particularly described, dated January 25, 1918, and recorded January 30, 1918, in the office of the Recorder of Deeds of Grundy County, Missouri, in Book 145 at page 56, the foregoing lands lying in Grundy County, Missouri;" (2) "Subject to a deed of trust given by Henry J. Hughes, etc., the foregoing lands lying in Grundy County, Missouri;" (3) "All of said property conveyed subject to all encumbrances of record; the foregoing land lying in Grundy County, Missouri;" (4) "Subject to a mortgage given thereon by grantors conveying to Herschel Bartlett, etc., the foregoing lands lying in Livingston County, Missouri;" (5) "(Subject to present encumbrances) the foregoing lands lying in Livingston County, Missouri;" (6) "Subject to a deed of trust given thereon by grantors conveying to Herschel Bartlett in trust to secure, etc., the foregoing lands lying in Harrison County, Missouri;" (7) "The foregoing lands lying in Cheyenne County, Colorado;" and (8) "(except all encumbrances, including taxes), the foregoing lands lying in Kiowa County, Colorado."

At the time of the conveyance to Knight there was an outstanding deed of trust or mortgage, theretofore

given by defendant Thompson to one Herschel Bartlett to secure the payment of $150,000 with five per cent annual interest thereon, covering 4375 acres of the land, of which 3291 acres lay in Grundy County (being the land first described in the decree under the heading "Description of Lands") and the remainder in Harrison and Livingston counties. On February 19, 1923, the trustee, pursuant to notice given in accordance with the provisions of the consent decree, sold at public sale the 3291 acres lying in Grundy County. He sold the land in parcels, all to be cleared of encumbrance. On February 20, 1923, pursuant to like notice he sold four other tracts of land in Grundy County aggregating 1216 acres. Three of these were encumbered, each carrying a mortgage independent of the others. These were sold subject to encumbrance. The fourth was clear. The Grundy Land Company, a corporation organized by Thompson's unsecured creditors (the plaintiffs herein) and to whom they had assigned their respective claims, was the purchaser at each of these sales. In his report to the court, filed March 8, 1923, the trustee stated that he had sold the 3291 acres covered by the Bartlett deed of trust for the aggregate sum of $208,200; and that from this was to be deducted the indebtedness secured by the deed of trust and the back taxes on the land which together amounted to $161,465.35, leaving $46,734.65 as the net balance to be realized from the sale. His report further disclosed that the equities in the three tracts sold subject to encumbrance and the remaining tract sold clear together brought the sum of $23,500; and that there remained of the trust estate about 1000 acres of land in Harrison and Livingston counties and approximately 10,000 acres in the State of Colorado, all of which the trustee purposed to sell at the next term of court.

Defendant filed exceptions to the trustee's report of sales. All of the exceptions were based on the contention that the consent decree did not authorize the trustee to sell the lands covered by the Bartlett deed of trust free of that encumbrance, but on the contrary required him

to sell subject to it.   On that hypothesis defendant in-
sisted : that the trustee, notwithstanding the statement in
his report that he had sold the land clear of encumbrance,
in fact sold only the equity of redemption; that as the
plaintiffs, who purchased under the name of Grundy
Land Company, were fully cognizant of the terms of the
decree and were bound thereby, the sale should be con-
firmed as a sale of the equity of redemption, and that as
$208,200, the proceeds of such sale, was more than enough
to pay the costs incurred in the administration of the
trust, reimburse the plaintiffs for advancements made
and satisfy their claims, the other sales should be not
confirmed.

At the hearing on the exceptions it developed that in
the published notices of sale it was stated that the land
covered by the Bartlett deed of trust would be sold clear
of encumbrance; that an announcement to the same ef-
fect was made by the trustee when the land was put up
for sale; and that defendant was present at the sale
and, though fully advised as to both the published and
oral announcements and of the trustee's purpose pursu-
ant thereto to sell free of encumbrance, offered no ob-
jection thereto.   It was further shown that the land was
sold subject to encumbrance at a public sale by the trus-
tee in the preceding November and the sale subsequently
set aside by the court on exceptions filed by defendant;
and that at the last sale, when sold to be cleared of en-
cumbrance, it brought $7,000 more than at the preceding
one when sold subject to encumbrance.  ·

The court approved and confirmed the sales as made,
specifically finding, among other things, that the sale of
the land encumbered by the Bartlett deed of trust was
made in compliance in all respects with the consent de-
cree; and that the manner in which the sale was made
''was the most advantageous way in which to sell said
lands, and resulted in benefit to the said C. D. Thompson,
in that said lands would and did bring a greater price so
sold than they would have brought to . have sold the
equity therein, the purchaser taking the lands subject

to such mortgage and liens; that such manner of sale was the most practical and most advantageous to the said C. D. Thompson.'' It appearing further that the defendant had never surrendered possession of any of the lands conveyed by him to the trustee, and was refusing to do so, a writ of assistance was awarded the Grundy Land Company to put it in possession of the lands purchased by it, and a like writ to the trustee to enable him to obtain possession of the lands not sold and constituting the remainder of the trust estate. From the judgment and orders just mentioned defendant Thompson prosecutes this appeal.

I. Appellant in support of his contention, that the trustee was without authority to sell the land covered by the Bartlett deed of trust clear of encumbrance and apply the proceeds first to the discharge of that lien and then to the objects of the trust, advances these propositions: (1) the decree specifically directs that the land be sold subject to said deed of trust; (2) it specifically directs how the proceeds of the sale shall be applied, and the application of any part of them to the discharge of the prior deed of trust is not included in such direction; and (3) even if the declaration of trust and the decree had been silent as to how the lands should be sold and the proceeds of the sales applied, no part of such proceeds could be used in the discharge of the prior lien. The three present such closely related matters that they will be considered together.

The assertion that the decree expressly provides that the land should be sold subject to the deed of trust is based on this language: ''Subject to a mortgage given thereon by grantors conveying to Herschel Bartlett in trust to secure the payment of a note and coupons in said deed of trust particularly described, dated January 25, 1918, and recorded, etc., the foregoing lands lying in Grundy County, Missouri.'' But, as appellant concedes, this was but a part of the description of the land; and the decree on its face shows that the land descriptions

therein as a whole are simply transcripts of the descriptions as contained in the deeds from the defendant to the trustee. The clause just quoted and similar ones, which have been heretofore set out, do not purport to be directions as to how sales shall be made by the trustee, they are merely constituent parts of the descriptions, respectively, of the assets conveyed.

There was no specific direction in the decree as to how the trustee should sell the land encumbered by the Bartlett deed of trust with reference to that encumbrance. However, only the equity of redemption was conveyed to him; and consequently that interest in the land was all that it was incumbent upon him to sell and account for. The question that confronted him was *how* to sell in order to realize the greatest return. Here was a tract of land containing more than three thousand acres encumbered by a single mortgage of $150,000. There would be few, if any, buyers for such a large body of land; to sell in parcels subject to the mortgage covering the whole would be difficult if not wholly impracticable. The declaration of trust and the decree gave him wide powers. They enjoined upon him as a duty to "prevent as far as reasonably possible the lands from being sacrificed or dissipated by reason of the existing mortgages and deeds of trust." He had first sold subject to the mortgage and the sale had been set aside by the court as inadequate. He then sold in parcels, to be clear of encumbrance; from the aggregate amounts bid he deducted the mortgage debt and reported the balance as the clear proceeds of the equity of redemption. That procedure was but a method of selling the equity of redemption, and it was fully authorized under the broad powers conferred by the trust. Authorities cited by appellant, to the effect that a trustee holding the naked title cannot on a sale of the property use part of the purchase money to satisfy prior encumbrances, unless expressly empowered thereto in the instrument creating the trust, are not in point.

The learned chancellor *nisi* found that the method employed by the trustee in making sale of the equity of redemption was the most practicable and the most advantageous that could have been adopted. We fully concur in that finding and approve his action in confirming the sale.

II. Appellant insists that the other sales reported by the trustee should not have been confirmed on the ground that the equity of redemption in the land encumbered by the Bartlett mortgage sold, according to his theory, for $208,200; enough to fully satisfy all the purposes of the trust. But as only $46,734.65 was realized, a sum wholly insufficient for those purposes, this contention fails.

Other Lands.

III. The court had complete jurisdiction of the *res* and of the parties. It had theretofore adjudged ''that the possession of all of said real estate be delivered to A. G. Knight by C. D. Thompson on March 1, 1923, provided that if any real estate is sold under this trust by the trustee, then possession of such real estate so sold is to be delivered by C. D. Thompson to the purchaser February 28, 1923.'' No new right or title in defendant had intervened since the rendition of the decree. The writs of assistance were necessary to the carrying out of the judgments and orders of the court in administering the trust. They were properly awarded. [State ex rel. v. Evans, 176 Mo. 310, 325.]

Jurisdiction: Writs of Assistance.

The judgment and orders appealed from are affirmed. All concur.