**ST. LOUIS HOUSING AUTHORITY**

v.

**JOWER et al.**

No. 28801.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

Paul J. Kaveney, Joyce Pueser, St. Louis, for appellant.

Shifrin, Shifrin & Agatstein, St. Louis, for respondents.

WOLFE, Commissioner.

This is an appeal by plaintiff, St. Louis Housing Authority, from an order of the circuit court overruling its motion to tax against defendants the costs of executing a certain writ under which plaintiff was put into possession of defendants' land, the subject matter of a condemnation proceeding.

This cause was instituted in the Circuit Court of the City of St. Louis on April 13, 1951, by the filing of a petition for condemnation for the purpose of slum clearance and construction of low-rent housing projects. Among the parcels of land to be condemned was certain real estate belonging to defendants, and described in the petition as Lots 4, 5, 6 and 7 in Block.

2307 of the City of St. Louis. With respect to said land, the court, on June 11, 1951, entered its decree as follows:

"It is therefore ordered, adjudged and decreed that the lands, property, and rights be and stand condemned for the uses and purposes as set out in the petition; and the plaintiff shall have the right to take possession of fee simple title to and/or make use thereof immediately upon payment to the Circuit Clerk in the amount, if any, which may be asserted in the condemnation commissioners' report."

By said decree three commissioners were appointed, and directed to view the property and return under oath an assessment of net damages sustained by the defendants as a result of the appropriation of said land.

On July 19, 1951, the commissioners filed their report. In said report there was allowed the sum of $36,575 as damages for the taking of said land, which amount was paid into the registry of the court by plaintiff on July 21, 1951. Exceptions to the commissioners' report were filed by the defendants on July 20, 1951. These exceptions were dismissed with prejudice on September 20, 1951. In the meantime, and on August 22, 1951, defendants filed their motion for distribution of the funds paid into court, which motion was heard on September 20, 1951, and sustained on October 1, 1951. The court on said date ordered:

"There shall be disbursed out of the registry of this court to Isaac Jower, also known as Isadore Yaffe, and Pearl Jower, also known as Pearl Yaffe, the sum of $36,302.25 in full and final satisfaction of the damages to them for the taking of their property described in plaintiff's petition, and to Del L. Bannister, Collector, $272.75."

On October 3, 1951, pursuant to said order, defendants were paid the sum of $36,302.25.

After the funds were paid into court, and on July 27, 1951, the plaintiff made application to the court for a writ of execution, which application was sustained and an execution ordered. Said writ was issued by the clerk pursuant to said order. It was returnable the second Monday of September, 1951, and commanded the sheriff to cause to be delivered to plaintiff the possession of said premises.

On or about July 27, 1951, presumably after the issuance of the writ, an agreement was entered into between the parties whereby plaintiff agreed to forego possession in consideration of defendants' dismissal of their exceptions to the commissioners' report and the vacation of said premises on November 1, 1951. The writ theretofore issued was thereafter returned unexecuted by the sheriff.

Defendants did not surrender possession of the premises on November 1, 1951. Subsequent thereto numerous demands were made upon defendants for possession, but to no avail. A second writ was then issued by the court, returnable to the December Term 1951, but was also returned unexecuted. The deputy sheriff charged with the execution of said writ was assured by defendant Isaac Jower on numerous occasions that he was moving his goods, which assurances appear not to have been true. At one time said defendant promised to vacate the premises within three weeks, but failed so to do. Thereupon, the plaintiff secured from the circuit clerk another writ, returnable to the February Term 1952. This writ was issued on December 13, 1951, and is in words and figures as follows, to wit:

"State of Missouri $\Big\}$ Sct.
City of St. Louis

"To the Sheriff of the City of St. Louis—Greeting:

"Whereas, St. Louis Housing Authority, a municipal corporation, on the 11th day of June, nineteen hundred and fifty-one, at our Circuit Court, before one of the judges thereof, by the judgment and consideration of said court, recovered against Isaac Jower, a/k/a Isadore Yaffe, Pearl Jower,

a/k/a Pearl Yaffe, et al., the posession of the premises in plaintiff's petition mentioned and described, to wit: (Here follows legal description of property).

"These are, therefore, to again command you, that without delay you cause to be delivered to the said plaintiff the possession of said premises and that said Isaac Jower, a/k/a Isadore Yaffe, Pearl Jower, a/k/a Pearl Yaffe, et al., before the judges of said court on the first Monday of February next, you certify to said judges how you execute this writ, and have you then and there this alias writ."

Said writ was signed by the clerk of the circuit court and the seal thereof affixed thereto.

On December 17, 1951, the sheriff appeared upon defendants' premises with trucks and employees of Daniel Hamm Drayage Company and proceeded to move the property of defendants from the premises. Defendants' business at said location was known as "Yaffe Iron and Metal Company", and on said premises were hundreds of tons of scrap iron, lumber and other equipment. The process of moving defendants' property required about a week, at the end of which time substantially all the material and property of the defendants had been removed from the condemned real estate and deposited on land of defendants located on Chouteau Avenue. The sheriff then executed the following return to the writ:

"Executed this writ on the 27th day of December, 1951, by seizing and taking into my possession the herein described premises. I did then deliver posession of said premises unto the herein named plaintiff, St. Louis Housing Authority, per its agent, G. B. Cleary, Exec. Dir. Plaintiff incurred moving costs of Three Thousand Five Hundred and Seven and 69/100 Dollars ($3,507.69). Photostatic copies of invoices of Daniel Hamm Drayage Company were attached hereto and made part of this return. All done

in the City of St. Louis, as so ordered by the Court.

"Thomas F. Callanan Sheriff
"Edward T. Linehan, Deputy"

Also endorsed on said writ was the following:

"12/17/51 Received possession of parcel No. 891, parcel 486, and parcel 890 from the Sheriff, City of St. Louis, on the 26th day of December, 1951.
"St. Louis Housing Authority,
"B. G. Cleary, Exec. Dir."

On February 14, 1952, plaintiff filed its motion to tax the cost of moving defendants' property from the condemned premises. By said motion it was alleged that:

"Plaintiff hired Daniel Hamm Drayage Company to assist the sheriff in the removal of said defendants' personal property, pursuant to order of court obtained on December 13th as aforesaid. The latter was caused to use dump trucks, tractor and crane, also numerous skilled mechanics and laborers, and spent seven days, from December 17 to December 26, removing defendants' goods, at a cost of three thousand five hundred and seven dollars and sixty-nine cents ($3,507.69), all of which costs were reasonable and necessary and all directly caused by the failure and refusal of defendants, their agents, partners and representatives to comply with the order of this court.

"Wherefore, plaintiff prays that the court enter an order directing that the costs of $3,507.69 be recovered from defendants."

Thereafter, defendants filed a motion to strike plaintiff's motion to tax the costs of moving defendants' property and, as grounds for said motion, it was alleged: (1) that said expense was not taxable as court costs, not being authorized by statute; (2) that by reason of the agreement that defendants should retain possession until November 1, 1951, defendants became tenants of plaintiff, which tenancy could not be terminated and possession obtained,

except by an action under the laws relating to forcible entry and unlawful detainer,—the court was therefore without jurisdiction to enter any order by way of execution, and for that reason plaintiff's employment of the drayage company to remove defendants' property constituted a trespass; (3) that the expenditure of $3,507.69 was unreasonable and was an unnecessary expense for the reason that defendants, at the time of the levy of execution, were in the process of removing their property from the premises in an orderly fashion and would have vacated said premises with reasonable expedition without further legal process; (4) that defendant Isaac Jower was in business as a collector of and dealer in metals, building materials and similar bulky and weighty property, which could not readily be removed; that although he agreed to vacate the premises by November 1, 1951, it was impossible for him to do so for lack of available space to which said property could be removed, although he had diligently attempted to find a suitable location for the continuation of his business; (5) that the levy of execution by plaintiff was wilful, malicious and without urgency to justify such drastic action; that although plaintiff represented from time to time that construction work upon the housing project was to commence, said land was still lying idle and was not required for plaintiff's use, and was not likely to be required for plaintiff's use for several months in the future.

Said cause came on for hearing on May 28, 1952, at which time counsel for defendants objected to the introduction of any evidence in support of the motion. The grounds stated by said counsel in support of the objection were: (1) that the court was without jurisdiction to issue the writ in question; and (2) that the costs incurred were not taxable under the statute relating to costs in condemnation cases. Section 523.070 RSMo 1949, V.A.M.S. This objection was overruled. Evidence was then introduced which developed the facts as heretofore set out. At the conclusion of the case the court, by an order duly made and entered of record, overruled plaintiff's motion. From this order, plaintiff has appealed.

In support of its contention that the court erred in overruling its motion to tax as costs a $3,507.69 trucking bill, the plaintiff asserts that since the court had adjudged title and that the right of possession rested in the plaintiff the court could issue a writ of possession and the cost of executing such a writ is properly chargeable to the defendants.

Plaintiff relies upon Section 476.-070 RSMo 1949, V.A.M.S., which states:

"All courts shall have power to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law."

It is said that this authorizes the issuance of the writ which is in the nature of a writ of assistance.

"A writ of assistance, in modern American practice, is a form of process issued by a court of equity to transfer the possession of property, and more specifically of lands, the title or right to which it has previously adjudicated, as a means of enforcing its decree". 7 C.J.S., Assistance, Writ of, § 1, p. 2.

"The writ will be refused and so will not issue against persons * * * who have acquired a new and independent right or title to the property, or make a prima facie showing to that effect." 7 C.J.S., Assistance, Writ of, § 4, p. 5.

Our Supreme Court has so construed the law as it relates to the issuance of such a writ. Farmers' Exchange Bank v. Thompson, 309 Mo. 669, 274 S.W. 745, loc. cit. 748; Irwin v. Burgan, 325 Mo. 309, 28 S.W.2d 1017, loc. cit. 1022. Thus, there are two prerequisites to the use of the writ. The first is that there has been an adjudication of title by the court to which application for the writ is made, and the second is that no right in the party against whom the writ is directed has intervened since the decree.

.This first calls for a consideration of just what the court had adjudicated. The plaintiff, under Section 99.120 RSMo.1949, V.A.M.S., of the Municipal Housing Act, had the right to acquire property by the exercise of the power of eminent domain. Its right to appropriate to its use the property of the defendants rests upon this statute and not upon any judgment of the court. After the St. Louis Housing Authority had paid into court the amount awarded by the commissioners the court had duly appointed, there was nothing left in the case for determination or review except the amount of compensation to be awarded. The condemnor makes his own appropriation of private property for public use. Caruthersville School Dist. No. 18 of Pemiscot County v. Latshaw, 360 Mo. 1211, 233 S.W.2d 6, loc. cit. 11; State ex rel. City of St. Louis v. Oakley, 354 Mo. 124, 188 S.W.2d 820; State ex rel. Union Electric Light & Power Co. v. Bruce, 334 Mo. 312, 66 S.W.2d 847; State ex rel. Stratton v. Maughmer, 240 Mo.App. 714, 214 S.W.2d 754; State ex rel. State Highway Commission of Missouri v. Day, 327 Mo. 122, 35 S.W.2d 37, loc. cit. 38.

In the Day case last above cited the court said: "The exercise of the power of eminent domain has been delegated by the Legislature to the state highway commission and to various municipal and public service corporations, but not to the courts. The condemnor in every case, in the exercise of a discretion not subject to judicial review, makes its own appropriation of private property for public use. When it pays to the owner of the property so appropriated just compensation, the title passes by operation of law. The only function that the court performs in a condemnation proceeding is in the ascertainment of just compensation, unless the question of public use be drawn into the proceeding. It may in its judgment make pronouncement of condemnation, but, if so, its judgment in that respect is a mere empty form."

█ It is true that the decree in the case under consideration recites that the plaintiff shall have the right to fee-simple title, to take possession and make use of the land, but the only function of the court was to determine the compensation to be paid for the taking as there was no question of public use brought into the proceeding. The decree insofar as it goes beyond that is a "mere empty form". State ex rel. City of St. Louis v. Oakley, supra; State ex rel. State Highway Commission of Missouri v. Day, supra. .

It therefore appears that there is no decree of title or possession upon which to rest the writ. Nor does a right of possession follow the decree as it is confined to compensation for the taking of the property. Even though the proper procedure had been followed throughout to secure the issuance of the writ, it could not properly issue because it was not in the enforcement of any decree of the court.

Where there is a decree awarding possession to plaintiff there is still the question of an intervening right in the defendant. Here it was agreed between plaintiff and defendants that the defendants could remain on the property for a certain time if they would then remove their accumulation of scrap iron. Therefore, the defendants had an intervening right arising out of this agreement. They breached their agreement and it may be that the plaintiff has a cause of action for damages but the agreement itself precludes the issuance of a writ of assistance. Farmers' Exchange Bank v. Thompson, supra; Irwin v. Burgan, supra. Consequently, the writ was not valid and under no theory of the law could the cost of its execution be charged to the persons against whom it was directed. The court properly denied plaintiff's motion to tax as costs the trucking bill.

For the reasons stated, it is the recommendation of the Commissioner that the order of the circuit court overruling plaintiff's motion to tax the cost of executing the writ against the defendants should be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The order of the circuit court overruling plaintiff's motion to tax the cost of executing the writ against defendants is accordingly affirmed.

ANDERSON, P. J., BENNICK, J., and HOLMAN, Special Judge, concur.