NORA C. STEPHENS and THOMAS C. STEPHENS, Appellants, v. MOUND CITY LIVERYMEN & UNDERTAKERS ASSOCIATION OF ST. LOUIS et al.

In Banc, December 6, 1922.

1. **PRACTICE: Objection to Introduction of Evidence: Pleading: No Cause of Action.** Notwithstanding defendants have filed an answer, an objection by them, when the case comes on for trial, to the introduction of any evidence, on the ground that the petition does not state facts sufficient to constitute a cause of action, is in effect a challenge by general demurrer to the sufficiency of the petition.

2. **PLEADING: Cause of Action: General Demurrer: Admission.** A general demurrer that plaintiff's petition does not state facts sufficient to constitute a cause of action does not admit the truth of

Stephens v. Liverymen & Undertakers Assn.

the conclusions of the pleader. In this case it did not admit the pleaded conclusion that defendants are in a combination and conspiracy to restrain trade and are maintaining a monoply for the purpose of controlling the livery and undertaking business and prices to be charged for services rendered therein. It only admits the truth of the facts pleaded, and the question whether said conclusions can be predicated on those facts still remains.

3. **PETITION: Combination in Restraint of Trade: Damages: No Cause of Action.** A petition charging that defendant corporations, pursuant to a written agreement among themselves, refuse to hire or loan their carriages and hearses to undertakers who are not members of the association defendants have so formed, and that, as a result, plaintiffs, who are not members, can neither hire nor borrow from them, to their great damage, and in effect charging nothing more, does not charge a combination in restraint of trade, and does not state a cause of action under the anti-trust statutes, nor an actionable conspiracy at common law.

4. ———: ———: ———: ———: **At Common Law.** Where it is not inferable from the facts alleged that defendants entered into a combination for the purpose of injuring plaintiffs, or any one else, in their business, but on the contrary the reasonable inference to be drawn from them is that the agreement was entered into for the primary purpose of promoting some common interest of their own, there is no statement of sufficient facts to constitute an actionable conspiracy at common law.

5. ———: ———: ———: ———: ———: **Incidental Injury to Others.** The fact that an agreement between corporations entered into for the primary purpose of promoting some common interest may incidentally injure other does not render it unlawful.

6. ———: ———: **Use of Private Property.** Defendant undertakers, who are owners of carriages and hearses which are private property in no way impressed with a public use, may refuse to lend or hire them to other undertakers, for any reason they may have, or for no reason at all.

Appeal from St. Louis City Circuit Court.—*Hon. Moses Hartmann*, Judge.

AFFIRMED.

*George Eigel* and *James T. Roberts* for appellants.

(1) The public policy of this State will not permit the control of an important and necessary line of busi-

ness to be placed in the hands of any body or association of persons members of that body acting in unison or under agreements. State ex rel. v. Harvester Co., 237 Mo. 369; State ex rel. v. Packing Co., 173 Mo. 356. (2) It is not necessary that the result of this combination should be a complete monopoly. It is sufficient for the purposes of this action that it tends to that end and tends to deprive the public from the advantages which flow from free competition. State ex rel. v. Packing Co., 173 Mo. 356; United States v. Knight, 156 U. S. 16. (3) The public policy of this State, as evidenced by its common and statutory law and the decisions of its appellate courts construing that law, was violated when the Mound City Liverymen & Undertakers' Association of St. Louis and the individual and corporate defendants bound themselves together under the agreement to restrict the hiring of hearses, horses and carriages or other equipment necessary for the conduct of a funeral, with the intent to create a monopoly and thereby control prices. State ex rel. v. Stock Exchange, 211 Mo. 181. (4) The occupation or calling of these plaintiffs as undertakers, by the means of which they earned their livelihood, is property within the meaning of the law, and as such is entitled to protection. This is aside from and entirely independent of the unlawful character of the association. The conduct of this association and the other defendants, as set forth in the petition, discloses a state of facts which makes the defendants guilty of a boycott in an effort to establish a monopoly and entitles plaintiffs to the relief sought. Door Co. v. Fuelle, 215 Mo. 422; Clarkson v. Laiblan, 178 Mo. App. 708. (5) In an action against the members and officers of an association of liverymen and undertakers for damages for conspiracy in an effort to establish a monopoly, where no theory of the case developed in the trial court, a general demurrer was improperly sustained if the petition stated a cause either under the statute or at common law. Harelson v. Tyler, 219 S. W. 908.

*Jourdan, Rassieur & Pierce* for respondents.

(1) A general demurrer admits only the facts which are well pleaded. It does not admit the pleader's conclusions either of law or fact. Harelson v. Tyler, 219 S. W. 912. (2) Appellants cannot sue upon one cause of action and recover upon another: If the petition is brought under a statute to recover a penalty given by statute, appellants must recover the penalty or not at all. In such case, if the petition fails to state a cause of action under the statute, a demurrer should be sustained, and it is immaterial whether or not there are averments in the petition which would have enabled appellants to recover at common law. Cole v. Armour, 154 Mo. 333, 350; Roaring Fork Potato Growers v. Clemons Produce Co., 193 Mo. App. 657. (3) Any number of persons, commissionmen, agents, undertakers, liverymen or persons engaged in the business of supplying any sort of service may form an association for the better conduct of their business, and may agree among themselves that they will not transact business with others who are not members of said association or with those who trade with non-members, and such an agreement is not in violation of the anti-trust laws of this State, nor of any rule of the common law. Co-Operative Live Stock Commission Co. v. Browning, 260 Mo. 324; Anderson v. United States, 171 U. S. 604, 43 L. Ed. 300; Harelson v. Tyler, 219 S. W. 908; National Fireproofing Co. v. Mason Builders Assn., 169 Fed. 259. (4) The petition fails to state a cause of action under the Statutes. R. S. 1919, secs. 9655, 9656, 9657, 9658; Co-Operative Live Stock Commission Co. v. Browning, 260 Mo. 324; Harelson v. Tyler, 219 S. W. 908; State ex rel. v. Associated Press, 159 Mo. 410, 456; Anderson v. United States, 171 U. S. 604. (5) The petition fails to state a cause of action at common law. National Fireproofing Co. v. Mason Builders Assn., 169 Fed. 259; 5 R. C. L. 1095-1098.

RAGLAND, C.—Plaintiff filed in the Circuit Court for the city of St. Louis the following petition:

"Come now the plaintiffs and, by leave of court first had and obtained, file this their amended petition.

"Plaintiffs state that they are husband and wife; that the defendants, Mound City Liverymen & Undertakers' Association, Clement & Schur Livery & Undertaking Company, Cullen & Kelly Livery, Undertaking & Embalming Company, C. Hoffmesiter Undertaking & Livery Company, McFarland & Finan Undertaking & Livery Company, Wm. J. Roberts Livery & Undertaking Company, St. Louis Livery Company, Henry Leinder Undertaking Company, Wacker-Helderle Undertaking & Livery Company, and Marshall Brothers' Livery Company, are corporations, duly organized and existing under the laws of the State of Missouri; that all of the defendants named are members of the Mound City Liverymen & Undertakers' Association.

"For cause of action plaintiffs state that they are and have been for a long time engaged in the business of undertaking and embalming in the city of St. Louis; that plaintiff, Thomas Stephens, is a licensed embalmer; that they have complied with the state and local laws; that they have established for themselves a substantial and profitable business, which they carried on successfully for many years, until, on or about the 1st day of October, 1916.

"Plaintiffs state that these defendants, the Mound City Liverymen & Undertakers' Association and the members thereof have entered into an agreement and combination in writing, combining and conspiring together against these plaintiffs and all other undertakers in the city of St. Louis who are not members of said association, whereby it is agreed and understood by and between the said defendants that these defendants would not and should not trade, exchange, give or hire to any undertaker, not a member of this association, any carriages, hearses or other equipment, and in order to more

effectually enforce said agreement and carry out and further said conspiracy, said Mound City Liverymen & Undertakers' Association of St. Louis, and the other defendants, as members thereof, agreed and threatened to suspend and fine any member of said association trading, exchanging, going or hiring or dealing with any undertaker not a member of said association, any carriages, hearses, horses or other equipment, and thereby tried to force and compel these plaintiffs to join said association and become a party to said conspiracy, which these plaintiffs refused to join and become members of said Undertakers' Association and become party to said unlawful combination, conspiracy, agreement and understanding, and refused to thereby aid and assist these defendants in their unlawful undertaking to create and maintain a monopoly for the purpose of controlling the livery and undertaking business in the city of St. Louis, Missouri, and to control the price to be charged for services so rendered, the association and the individual defendants have for a long time in the past refused to trade, exchange, give or hire to these plaintiffs or any other person in the city of St. Louis, not a member of said association, any carriages, hearses, or other equipment used in connection with the livery and undertaking business.

"Plaintiffs state that said conspiracy and combination entered into and carried on, and now carried on, was and is for the purpose of limiting competition and restricting trade, and raising and controlling the prices for the hiring of carriages and hearses.

"Plaintiffs state that by reason of the aforesaid secret, wrongful and unlawful agreement, understanding and conspiracy among and between these defendants, plaintiffs have, for a long time before the filing of this suit, been denied by these defendants the right and privilege of obtaining carriages and hearses from members of said association, said carriages and hearses being necessary with which to carry on their said business of

undertaking and conducting funerals, and they have been obliged to forego and abandon funerals from which they could have earned large profits but for the wrongful interference and restraint put upon them by these defendants, and were finally compelled to abandon and quit their said business by reason of the wrongful interference and restraint put upon them by these defendants.

"Plaintiffs state that on divers occasions they have gone to the various members of the said association and offered and desired to hire from them carriages and hearses, tendering the regular price charged for the hire of the same and needed by them to carry on and conduct funerals for persons who requested them so to do, and that these defendants refused to hire to this plaintiff the carriages and hearses by them so requested, stating as a reason for so refusing that they did not belong to the said Mound City Liverymen & Undertakers' Association.

"Plaintiffs state that these defendants, conspiring and working together as aforesaid, have driven and forced these plaintiffs and other reputable undertakers, in many instances, entirely out of business.

"Plaintiffs state that by reason of this conspiracy and combination among these defendants, it is useless for them to make or attempt to make any contract or agreement with customers for the burial of their dead, for the reason and because of the interference and restraint put upon them by these defendants, they cannot hire or obtain the necessary equipment for the purpose of carrying out said agreements.

"Plaintiffs further state that on some occasions they have requested the hire of carriages and hearses from some of the members of said association, and they agreed to furnish the same, but on being warned by defendants' officers that these plaintiffs were not members of said association, said parties refused to carry out their agreement and hire to these plaintiffs the carriages and hearses which they had previously agreed to do.

"Plaintiffs further state that by reason of the said unlawful agreement, combination, understanding and conspiracy and the wrongful acts of these defendants, they have been greatly injured in their business, have suffered great financial loss and damage by being prevented and restrained from carrying on their said business of undertaking and embalming, by reason of these defendants' wrongful refusing to trade, exchange, give or hire to them the necessary equipment for conducting funerals.

"Plaintiffs state that by reason of the aforesaid wrongful acts of these defendants, plaintiffs are and have been compelled to abandon and lose their business of undertaking and embalming in the city of St. Louis, all to their damage in the sum of twenty-five thousand dollars, and by reason of the fact that said conspiracy and combination is in violation of the statute of the State of Missouri, they are entitled to triple damages for the sum of seventy-five thousand dollars, for which said sum of seventy-five thousand dollars plaintiffs pray judgment, and for their costs of suit."

Defendants answered with a general denial.

When the cause came on for trial defendants objected to the introduction of any evidence, on the ground that the petition did not state facts sufficient to constitute a cause of action. The objection was sustained and plaintiffs declining to plead further the case was dismissed and final judgment entered for defendants. From such judgment plaintiffs prosecute this appeal.

The objection to the introduction of any evidence was in effect a challenge of the sufficiency of the petition by general demurrer. The question then is: Does the pleading state a cause of action under any theory of legal liability?

I. The phraseology of the petition and the averments of the last paragraph in connection with the relief sought, make it apparent that a cause of action growing

out of what is commonly called the Anti-Trust Statute was attempted to be stated. In substance the petition charges this: Defendants, who are members of the Mound City Liverymen & Undertakers' Association, have entered into an agreement in writing whereby they have agreed, under penalty of fine or suspension of membership, that they would not trade, exchange, give or hire to any undertaker not a member of their association, any carriages, hearses or other equipment; and by reason of such agreement and understanding between the defendants, plaintiffs have been denied "the right and privilege of obtaining carriages and hearses from members of said association, said carriages and hearses being necessary with which to carry on their (plaintiffs') said business of undertaking." It is also alleged: "That said conspiracy and combination, so entered into and carried on, was and is for the purpose of limiting competition and restraining trade, and raising and controlling prices for the hiring of carriages and hearses;" and that plaintiffs "refused to become party to said unlawful combination, conspiracy, agreement and understanding, and refused to thereby aid . . . defendants . . . in their unlawful undertaking to create and maintain a monopoly for the purpose of controlling the livery and undertaking business . . . and to control the price to be charged for services so rendered;" and that "defendants, conspiring and working together as aforesaid, have driven . . . plaintiffs and other reputable undertakers . . . entirely out of business."

*Restraint of Trade: Under the Statute.*

The conclusions of the pleader, that defendants are in a conspiracy and combination to limit competition and restrain trade and that they are maintaining a monopoly for the purpose of controlling the livery and undertaking business and prices to be charged for the services to be rendered therein, are not admitted by the demurrer. [Harelson v. Tyler, 281 Mo. 383, 397.] Can those con-

clusions, or either of them, be predicated on the facts pleaded? Brought within their smallest compass the facts are these: The defendants, pursuant to an agreement among themselves, refuse to loan or hire their carriages and hearses to undertakers who are not members of defendants' association; as a result, plaintiffs, who are non-members, can neither borrow nor hire from them. The gist of the "conspiracy" is the agreement not to loan or hire their carriages and hearses to non-member undertakers. How can such refusal on the part of defendants restrain trade? or lessen competition? or effect a monopoly of the livery and undertaking business? Why cannot plaintiffs buy carriages and hearses for themselves? or hire from those who seek their custom? or borrow from those willing to lend? It does not appear that the defendants own all, or even a greater part, of the carriages and hearses in the city of St. Louis. It is averred merely, "said hearses and carriages being necessary with which to carry on their undertaking business." But why are the hearses and carriages of defendants necessary to the carrying on of plaintiffs' business? With respect to these pertinent inquiries, the pleader gives us no information. It is likewise inexplicable how the agreement not to hire or loan vehicles to non-members of the association effects a control of prices to be charged for services rendered by undertakers and liverymen. It does not appear from anything alleged that there is a fixed or an agreed schedule of such prices, or that members of defendants' association are not at full liberty, each for himself, to make such charge, or no charge, for a given service as he chooses. Whether an agreement regulating and governing the prices to be charged by the members of the association for their services as liverymen and undertakers would be within the condemnation of the statute we need not decide. For the purposes of this case it is sufficient to say that the facts pleaded do not show an agreement or combination in restraint of trade or competition.

II.    Nor do the facts establish an actionable conspiracy at common law.   It is not inferable from them that the defendants entered into a combination for the purpose of injuring plaintiffs, or any one else, in their business;  on the contrary the reasonable inference to be drawn is, that the agreement was entered into for the primary purpose of promoting some common interest of their own, and the fact that it may incidentally injure others does not render it unlawful.   [Natl. Fireproofing Co. v. Mason Builders' Assn., 169 Fed. 259.]

**At Common Law.**

III.    It is further alleged in the petition that as a result of the agreement entered into by defendants, plaintiffs are "denied the right and privilege of obtaining carriages and hearses from members of said association." Nothing, however, is averred to show any right or privilege on the part of plaintiffs with respect to obtaining hearses and carriages from members of the association.   Presumably such vehicles are the private properties of the several defendants—in no way impressed with a public use.   The defendants are not bound therefore, to let them to whomsoever may apply.   For aught that appears they are wholly within their rights in refusing to lend or hire their equipment to plaintiffs—for any reason they may have, or for no reason at all.

**Private Property.**

We are clearly of the opinion that the petition does not state a cause of action.   The judgment of the circuit court is therefore affirmed.   *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAG-LAND, C., is hereby adopted as the opinion of the court. All of the judges concur.