C. D. THOMPSON, Appellant, v. FARMERS EXCHANGE BANK, TRENTON NATIONAL BANK, CITIZENS STATE BANK, TRENTON TRUST COMPANY, INTERNATIONAL BANK OF ST. LOUIS, BANK OF BRIMSON, DROVERS & MERCHANTS BANK, ST. JOSEPH, TRENTON HARDWARE COMPANY (all of the above defendants being corporations), GUY THOMPSON, WALTER P. FULKERSON, NANCY MARTIN, D. C. MC-VAY, JOSEPH S. NEFF, W. O. GARVIN, J. C. BARR and A. G. KNIGHT, Trustee.—62 S. W. (2d) 803.

Division One, August 3, 1933.

*Gossett, Ellis, Dietrich & Tyler* and *Milton V. Thompson* for appellant.

*Alfred M. Seddon, Paul R. Stinson, E. M. Harber* and *Henry L. Jost* for respondents; *Ryland, Stinson, Mag & Thompson, Sebree, Jost & Sebree, Carter, Jones & Turney* and *William T. Jones,* of counsel.

444

FERGUSON, C.—This is an action for damages for alleged false imprisonment. The Circuit Court of Jackson County sustained the joint motion to dismiss the amended petition filed by all the defendants except the First National Bank and J. C. Barr and sustained the separate demurrers to the petition filed by defendants, The First National Bank and Barr. The plaintiff elected to stand upon his amended petition and from the judgment of the circuit court, thereupon entered, dismissing the petition plaintiff appeals. The amount of damages prayed gives us jurisdiction of the appeal.

As shown by the record before us the events out of which this action arises had their beginning in 1921. In September, 1921, this plaintiff, Thompson, pursuant to an arrangement with the defendants herein (other than defendants J. C. Barr and A. G. Knight) who were his unsecured creditors in large amounts, and in consideration of the advancement by them of further sums of money, conveyed by warranty deeds approximately 18,000 acres of land situate in Grundy, Harrison and Livingston Counties, Missouri, and some in the State of Colorado to defendant Knight. Contemporaneously therewith Thompson executed a written declaration of trust wherein

Knight was named as trustee and given certain powers in relation to the management and sale of the lands conveyed by the warranty deeds for the purpose of paying Thompson's indebtedness to the creditors who are now made defendants herein. Subsequently a controversy arose as to the extent of the trustee's power to make sales and the right to possession of the land under the trust instrument. The interested creditors filed a bill in equity "praying the court to construe and enforce the trust" wherein Thompson and Knight, trustee, were named as defendants and without having filed any pleading they "appeared in court and consented that a decree be entered." Thereupon the court entered its decree that Knight as trustee had "full and complete power and authority to sell and convey all the real estate," defining the manner in which such sales should be made, fixing a date by which the possession of all such real estate should be delivered by Thompson to Knight or the purchasers of any part thereof and directing how the proceeds derived by the trustee from sales, rents and profits should be administered and distributed. Pursuant thereto the trustee Knight sold certain tracts of the land, stituate in Grundy County, to the Grundy Land Company, and made report thereof to the court to which report Thompson filed exceptions. On March 21, 1923, "the court approved and confirmed the sale as made" and "it appearing further that" Thompson "had never surrendered possession of any of the lands conveyed by him to the trustee" as theretofore ordered and decreed by the court and "was refusing to do so" it was again ordered that he deliver possession of the lands sold to the Grundy Land Company and possession of the lands not sold to Knight, trustee. From the judgment and the orders of the Circuit Court of Grundy County so made Thompson appealed, without *supersedeas* bond, and on July 30, 1925, at and during the April Term, 1925, of this court the judgment and orders of the circuit court were in all things affirmed. [Farmers Exchange Bank v. Thompson, 309 Mo. 669, 274 S. W. 745.]

It appears that on April 12, 1924, Knight instituted a contempt proceeding in the Grundy County Circuit Court by filing therein an information or "representation" charging that Thompson had "wilfully failed and refused and contemptuously of the court had failed and refused as ordered by the court . . . to deliver and turn over to him (Knight) possession of said land." In this proceeding the court found and adjudged Thompson to be guilty of contempt as charged, ordered that he be imprisoned until he should purge himself of such contempt, issued its commitment directed to the sheriff, Barr, a defendant herein, who by authority thereof placed Thompson in the Grundy County jail where he was imprisoned from and including April 25 to May 2, 1924. On April 23, 1926, Thompson filed suit for damages, for false imprisonment, in the Circuit Court of Grundy County against his creditors who had been beneficiaries in

the trust agreement and plaintiffs in the case of Farmers Exchange Bank v. Thompson, supra, Knight and the sheriff, Barr, as defendants. The same parties are defendants and respondents in the instant case. The case thus begun in the Grundy County Circuit Court was removed on change of venue to the Circuit Court of Adair County where plaintiff filed an amended petition to which defendants filed a joint general demurrer. The record of the subsequent proceedings in the Circuit Court of Adair County is as follows:

"This day the defendants' demurrer to plaintiff's amended petition is by the court considered and sustained; whereupon plaintiff takes a nonsuit with leave to move to set the same aside;

"It is therefore considered and adjudged that the defendants recover of plaintiff the costs of this action and have execution."

The above order was entered December 2, 1926. On December 2, 1927, naming the same defendants, plaintiff filed substantially the same petition to which a general demurrer had been sustained in the Adair County Circuit Court in the Circuit Court of Jackson County. On the same date summons for defendants, First National Bank (of Kansas City) and Barr issued, directed to the Sheriff of Jackson County, returnable to the January Term, 1928, of said court, and same were duly served. On January 11, 1928, defendants First National Bank and Barr, the only defendants upon whom service had been obtained, filed their joint demurrer averring that the petition did "not state facts sufficient to constitute a cause of action" and that it appeared upon the face of the petition "that if plaintiff ever had any cause against these defendants, or either of them, it is barred by the Statutes of Limitations." This demurrer was sustained on February 24, 1928. Thereafter on March 15, 1928, plaintiff, with leave of court, filed "his first amended petition" in the Circuit Court of Jackson County. All the defendants having been served, on March 22, 1928, the defendants, except the two defendants First National Bank and Barr, filed a joint motion, designated as a plea in abatement and motion to dismiss, and as ground therefor averred, that theretofore plaintiff had filed an amended petition in the Circuit Court of Adair County, against the same defendants named in the instant case, which petition "contained the same or substantially the same allegations as the petition in the instant case, and that on general demurrer filed by all of the defendants in said cause, the Circuit Court of Adair County . . . sustained the general demurrer to said petition and adjudged that plaintiff pay the costs of the cause and that defendants have execution therefor. That plaintiff filed no motion in arrest, nor for new trial, nor did he prosecute an appeal, nor sue out a writ of error from said judgment which became and was a final judgment in favor of these defendants on December 2, 1926." To this motion plaintiff filed an answer denying "each and every allegation therein contained." The next move in

the case was on April 20, 1928, when the defendants other than the First National Bank and Barr joined in and filed what is designated as a demurrer to the amended petition, wherein it is averred that the petition does not state facts sufficient to constitute a cause of action against defendants, or either of them, and then reiterates the matter set up in their pending motion to dismiss, refers to and reviews the proceedings had in the Circuit Courts of Grundy and Adair counties and pleads *res adjudicata* as to the matters alleged in the amended petition. On the same date the defendants First National Bank and Barr filed separate but identical demurrers to the amended petition the grounds of demurrer being that such petition "does not state facts sufficient to constitute a cause of action against this defendant" and that "it appears upon the face" of the petition that "if plaintiff ever had a cause of action against this defendant it is barred by the Statute of Limitations." On July 10, 1929, the pending motions and demurrers were presented to and heard by the court. The defendant movants in the motion to dismiss offered and evidence was received in support of same and in support of the matters alleged in their demurrer but which did not appear upon the face of the petition. ██ It will be observed here that the "speaking demurrer," i. e., the averment by demurrer to a petition of facts or affirmative matter not alleged or appearing by the petition which taken with the allegations of the petition show no cause of action to exist is not recognized in our procedure. [Pacific Lime and Gypsum Co. v. Missouri Bridge Co., 286 Mo. 112, 226 S. W. 853.] Upon the hearing the court entered orders of record as follows:

1. "The plea in abatement and motion to dismiss of all the defendants herein except The First National Bank and J. C. Barr is . . . sustained;"

2. "The joint demurrer of all the defendants except the First National Bank and J. C. Barr, is hereby stricken from the files."

3. "The demurrer of defendant J. C. Barr to plaintiff's first amended petition herein is . . . sustained."

4. "The demurrer of defendant, First National Bank of Kansas City to plaintiff's first amended petition herein is . . . sustained."

The record then shows that thereafter on the 13th day of July, 1929, the plaintiff by his attorneys announced that he would "stand upon his first amended petition herein." Whereupon judgment was entered dismissing the petition as to all the defendants from which judgment plaintiff appeals.

To sustain the motion to dismiss, set out, supra, filed by the defendants other than First National Bank and Barr, the amended petition filed in the Adair County Circuit Court, the record of the proceedings had there and the original petition filed in the Jack-

448

son County Circuit Court were introduced in evidence. The movants position is that the record entry of the Adair Circuit Court was a final judgment on the merits of the cause of action attempted to be stated in the original petition filed in the Jackson County Circuit Court which petition alleges substantially the same matter set out in the petition filed in and ruled on by the Adair County Circuit Court. Appellant contends that no final judgment was entered in the Adair County Circuit Court and that his action there was a dismissal or non-suit and that under Section 874, Revised Statutes 1929, providing, that if a plaintiff "suffer a nonsuit" he may "commence a new action from time to time, within one year after such nonsuit suffered," his original petition filed in the Circuit Court of Jackson County was a timely commencement of such new action.

██ ██ By recurring to the orders entered in the Circuit Court of Adair County, supra, it appears no final judgment was entered on the demurrer. The court sustained the demurrer whereupon the plaintiff could, we think, have amended the petition as "of course" (Sec. 773, R. S. 1929), stood on his petition allowing final judgment to be entered on the demurrer dismissing the petition from which he could, if he elected to do so, have appealed, or as he did, take a nonsuit (Sec. 960, R. S. 1929). No motion was made to set aside the nonsuit and the legal effect of the action taken was to work a dismissal and a final termination of that suit, but not a final adjudication of the merits of the controversy, so that, under the provisions of Section 874, supra, the action instituted in the Circuit Court of Jackson County was the commencement of a new action "within one year after such nonsuit suffered" within the meaning of that section. The nonsuit was taken December 2, 1926, the original petition in the new suit was filed in the Jackson County Circuit Court December 2, 1927. By our rule for "the computation of a period of time from an act done the day on which the act is done is to be excluded" (Kimn v. Osgood, 19 Mo. 60; Old Bank of Stoutsville v. Curtiss, 214 Mo. App. 270; and Parsons v. Egyptian Levee Company, 73 Mo. App. 458), therefore the suit in Jackson County Circuit Court was timely commenced "within one year after such nonsuit suffered." ██ Movants point to the judgment for costs entered against plaintiff in the Circuit Court of Adair County as sustaining their contention that the orders made in that court were in effect a final judgment on the demurrer to the amended petition filed there, but such judgment for costs is but an incident of the dismissal of a case by plaintiff and provided for by statute (Sec. 1254). For the reasons stated we are of the opinion the court erroneously sustained the motion to dismiss on the ground therein stated.

The statute (Sec. 864, R. S. 1929) provides that an action for false imprisonment "can only be commenced" "within two years" after the cause of action accrues. The amended petition filed in the

Jackson County Circuit Court which was dismissed by the judgment of that court, here appealed from, sufficiently pleads the commencement of a suit in the Grundy County Circuit Court within two years after the alleged cause of action accrued, the transfer of that case by change of venue to the Circuit Court of Adair County the nonsuit there taken and the commencement of the present suit upon the same cause of action within one year thereafter. We take it therefore that with such matter appearing upon the face of the petition the circuit court did not sustain the separate demurrers of The First National Bank and J. C. Barr upon the second ground therein, i. e., that it appears upon the face of the amended petition that such cause of action, if any, plaintiff may have had by reason of the matters stated in the petition is barred by the Statute of Limitations, but that the order and final judgment of the court upon their separate demurrers was based upon the first ground stated in the separate demurrers, that the amended petition does not state facts sufficient to constitute a cause of action against the demurring defendant. This same ground was included in the joint demurrer of the defendants, other than First National Bank and Barr, which the court struck from the files. While the individual or separate demurrer to the petition of defendant First National Bank as not stating facts sufficient to constitute a cause of action against it was sustained and the demurrer of the other defendants, except First National Bank and Barr, which included that ground, was stricken, nevertheless upon a reading of the amended petition, which we shall presently set out (hereinafter referred to merely as the petition), it will appear that if no cause of action as to the defendant First National Bank is stated then none is stated as to the other defendants and as the sufficiency of a petition to state any cause of action against a defendant can be raised and determined here on appeal if an examination and analysis of the petition discloses that no cause of action is therein stated as to any of the defendants then the final judgment dismissing the petition as to all the defendants would, in result, manifestly be a right and proper judgment and it would become our duty to affirm it. [Sec. 1062, R. S. 1929.]

We pass then to the petition which the court by its judgment dismissed and upon which plaintiff had elected to stand. The petition first alleging the corporate capacity and domicile of the various corporate defendants and the place of residence of the individual defendants continues as follows:

"Plaintiff states that heretofore, to-wit, on March 15, 1922, there was instituted in the Circuit Court of Grundy County, Missouri, a certain action, the same being a suit in equity, wherein, to-wit (here are set out the names of the parties plaintiff and defendant in that suit, Thompson and Knight, trustee, being defendants therein).

"Plaintiff further states that defendants herein, jointly and sever-

ally, conniving and acting at times together and again each separately and sometimes with one and sometimes with others of them, did heretofore, to-wit, on April 25, 1924, at Grundy County, Missouri, wrongfully, unlawfully and maliciously cause this plaintiff to be falsely arrested and unlawfully and wrongfully imprisoned, restrained and deprived of his liberty for a long time, to-wit, for a period of eight days from on and after said April 25th to and including May 3, 1924; that the said wrongful physicial imprisonment of this plaintiff and restraint of his liberty were actually made and done by defendant J. C. Barr, then sheriff of Grundy County, Missouri;

"That said Barr was instigated, requested and directed so to do by the other defendants herein, they acting jointly and severally and together and separately for said purposes and to said ends;

"That said Barr was so instigated, requested and directed by the other defendants as aforesaid to so falsely arrest and to seize this plaintiff and so imprison, restrain and deprive him of his liberty under the pretense and appearance of false, void, wrongful, unjust and ineffectual writings or written papers purporting and pretending to be an order of said Circuit Court of Grundy County, Missouri, purporting to be made, to-wit on April 24, 1924, and purporting to adjudge this plaintiff in said cause to be guilty of a contempt of said court, which said pretended order and writing, made upon the records of said court and the action of said court, purported to be embodied in said order, were made and written in the absence of this plaintiff and without his being present in court; that said pretended contempt with which this plaintiff was therein charged was not alleged to be or claimed to be or presented to the court to be an act or a contempt committed in the presence of the court but at a time and place far from and without the presence of the court; and after the said pretended order purporting to adjudge this plaintiff guilty of a contempt of the court was written upon the records thereof, another paper writing, purporting and pretending to be issued by said court to said Sheriff, was written and delivered to him purporting to be the writ and command or order of said court addressed to said Barr to seize, arrest and commit this plaintiff to jail and to imprison him until he should in accordance with a prior order of said court deliver possession of certain lands, approximately 8000 acres in Grundy, Livingston and Harrison Counties, Missouri, respectively, and to-wit, certain 10,000 acres of land in Cheyenne and Kiowa Counties, Colorado, to defendant A. G. Knight as trustee for the other defendants herein;

"Plaintiff further states that said writing upon the records of said court, purporting and pretending to be an order of said court, adjudging this plaintiff to be guilty of said contempt and directing him to be arrested and imprisoned, was a proceeding of which said

court, in the absence of this plaintiff at time same was made, was without jurisdiction to make and was unlawful and void and said pretended writ or order to said Barr as sheriff, directing him to seize and imprison this plaintiff until he should purge himself of that which in said writing was described as a contempt of the court, was based upon said pretended order so written in the records of said court and was itself void, wrongful and ineffectual and issued by said court without jurisdiction;

"Plaintiff further states that in said suit so pending in the said Grundy County Circuit Court there had been by said court on or about June 7, 1922, rendered and entered a judgment or decree that said Knight as trustee was entitled to the possession of the aforesaid lands; that he was such trustee for the purpose of selling same and to apply the proceeds of such sales to the payment of various and sundry sums claimed by the other defendants herein respectively to be owing to them from this plaintiff and said judgment and decree directing said Knight to sell said lands for said purpose which said Knight did proceed and purport to do as to a large part of said Missouri land, in or about the month of February, 1923; that at the February Term, 1923, of said court, said Knight reported thereto his making of said sales and said court rendered a final judgment in said cause that such sales be confirmed and afterwards, to-wit, on March 19, 1923, this plaintiff filed his objections and exceptions to said report at said term, and the same were by the court at said term on March 21, 1923, overruled and judgment entered confirming said sales and further providing and directing this plaintiff, as defendant in said cause, to deliver possession of said lands in Grundy, Livingston, and Harrison Counties, Missouri, as to such of same as were so sold by said Knight about 4500 acres to the purchaser thereof Grundy Land Co. and to deliver possession of such of the same as were not sold, and said lands in Colorado, to said Knight himself;

"That thereupon at the same term of court this plaintiff as defendant therein filed his application for an appeal to the Supreme Court of Missouri from the said final judgment and decree of said court and said appeal was allowed, and thereupon this plaintiff caused his said appeal to be lodged in said Supreme Court and the said appeal was not finally determined therein until, to-wit, on July 1, 1925;

"But nevertheless while said appeal was still pending on to-wit April 12, 1924, defendant A. G. Knight purporting to act as such trustee and also being the attorney and agent of the other defendants herein, did at their instance, request and direction, file in said circuit court in said cause a representation and charge that this plaintiff had wilfully failed and refused, and contemptuously of the court had failed and refused as ordered by the court, as aforesaid, to deliver and turn over to him possession of said land and had wrong-

fully, wilfully and contemptuously disobeyed and condemned the order and decree of said court directing this plaintiff to turn over to him such possession, and moved and prayed the court that this plaintiff be cited to show cause why he should not be punished for said alleged contempt of the court; and defendants so caused a citation to be issued to this plaintiff that he appear in said court, to-wit, on April 24, 1924, at one o'clock P. M., to show cause why he should not then and there be dealt with and punished for contempt of said court in the premises under Section 1553, Revised Statutes Missouri 1919;

"Plaintiff further states that at said time that said complaint or suggestion of contempt was so filed and made by said Knight on April 12, 1924, this plaintiff was as he had for a long time prior thereto been, in possession of said lands, and on said lands in Missouri he had large numbers of live stock, farming implements and personal property which he had been using and was using in conducting his vocation or the business of farming and live stock raising, feeding and handling; that knowing the judgment of said Grundy Circuit Court would in time be effective and necessary to be observed by this plaintiff, and intending and to the end that he might observe and obey said order and orders for delivery of possession of said lands, this plaintiff and said Knight agreed and said Knight consented that this plaintiff should have a reasonable opportunity to sell and dispose of his said personal property on said lands and in accordance with such agreement and for the purpose that plaintiff might so deliver possession, said Knight consented and agreed that he should have a reasonable time to sell and dispose of said property at public and other sales, to be had on said lands, and at or shortly after said Knight filed the aforesaid complaint or application to have this plaintiff cited for contempt, this plaintiff in pursurance of his said arrangement with said Knight, proceeded to and did advertise said personal property for sale at public sale, the same to be had and held at an early date, to-wit, on May 3, 1924, and said sale had been on and before April 25, 1924, well advertised, both in newspapers of the vicinity and by posting notices of sale in and about said counties wherein said lands were situate (here is enumerated personal property consisting of live stock and farming implements).

"That various of said items of personal property had been by reason of plaintiff's financial necessities mortgaged by and under various and sundry chattel mortgages to divers and sundry different persons and that plaintiff's presence at said sale and his supervision thereof, because of his knowledge of the details and items of said personal property and of the particulars of said chattel mortgages, was necessary to an advantageous sale of said properties and to prevent great sacrifice thereof; that such facts were well known to defendants;

"That notwithstanding his said agreement and arrangement with said Knight and the consent of said Knight, upon which plaintiff relied in advertising and arranging to have said sale of property, nevertheless said Knight, acting at the request, instigation and direction of the defendants herein, both as trustee and being at the same time their attorney and agent, and the attorney and agent of each of them, did wrongfully, wilfully and maliciously on said 24th day of April, present said charge and complaint of contempt against this plaintiff to said court and did prevail upon and persuade said court in the absence of this plaintiff to enter upon its records said void writing, purporting to be an order and judgment adjudging and determining this plaintiff to be guilty of contempt as charged and sentencing and directing this plaintiff to be arrested, seized and imprisoned, and thereupon said Knight in said capacities did cause the Clerk of said court to make out a paper writing purporting to be an order or writ of the court, commanding defendant Barr as such Sheriff of Grundy County, which he then was, to arrest, seize, imprison and restrain this plaintiff in jail and to commit him to jail and hold him therein until this plaintiff should deliver possession of said lands to said Knight; and thereby purge himself of said alleged contempt;

"That said writings purporting to be the order and judgment of said court, finding and adjudging this plaintiff guilty of contempt as charged by said Knight, and said writing purporting to be a writ directing said Barr as sheriff to arrest, imprison, and commit to jail this plaintiff, were and each was void and issued without jurisdiction;

"That thereupon, pretending to act under and by virtue of said void and ineffectual paper writings, defendant Barr did so at the instigation and direction of defendants herein falsely and wrongfully arrest and imprison this plaintiff, unlawfully and wrongfully, in the County Jail of Grundy County, Missouri, and did confine and restrain him therein (here a description of the discomforts of said jail and confinement therein is set out);

"That plaintiff by reason of the said false arrest and wrongful imprisonment was compelled and forced to forego, countermand and abandon said sale of personal property after the same had been so set, advertised and published to occur;

"Plaintiff further states that defendants so acting, both together and separately, were so doing among other wrongful intent to the end and for the purpose of oppressing and wrongfully compelling this plaintiff to withdraw and dismiss his said appeal then pending in the Supreme Court and to surrender and release any and all rights which he might have to said lands and any of the same, both those in Missouri and those in Colorado, and in effort to conclude and estop himself from ever thereafter claiming any rights or claims he had in respect to said lands and all parts thereof;

"That by reason of the premises, plaintiff being so falsely arrested, wrongfully imprisoned and deprived of his liberty, was compelled to make application and petition the Kansas City Court of Appeals for writ of *habeas corpus* and did obtain such writ against defendant Barr at the March Term thereof on May 2, 1924, commanding said Barr to produce the body of this plaintiff before said court on May 3, 1924, and was compelled to employ attorneys to represent him in such proceeding and did thereby cause the said J. C. Barr to release this plaintiff and was not otherwise able to secure his freedom; that this plaintiff was put to great expense in so protecting himself and securing his freedom and release from said false arrest and imprisonment in that he was obliged to employ attorneys and thereby incur liability to them for reasonable expense in the premises. . . .

"Plaintiff further states that his false arrest and imprisonment in the manner and as hereinbefore stated, caused him great physical and mental pain and anguish and he was thereby greatly humiliated, he having been a man of good reputation and standing in his community at all times prior thereto, and that he was by the wrongful acts of defendants also greatly injured and damaged in his good reputation."

Damages both actual and punitive are alleged and it is then alleged that plaintiff filed his petition based upon the cause of action herein in the Grundy County Circuit Court within two years after said cause of action accrued, the subsequent proceedings had in Adair County Circuit Court and the filing of the original petition herein in the Circuit Court of Jackson County, to all of which we refer supra. The petition closes with a prayer for damages both actual and punitive.

In the course of his printed argument plaintiff asserts that the petition not only states a cause of action for false imprisonment but also sufficiently states a cause of action for either malicious prosecution or malicious abuse of process but this observation is not elaborated upon and no authority is cited or argument advanced in support of same. The petition proceeds upon the theory that the court was without jurisdiction in the contempt proceeding and that its commitment under which plaintiff was imprisoned was void. There is a well-defined and fundamental distinction between malicious prosecution and false imprisonment, in the former the detention is malicious but under the due forms of law, in the latter the detention is without color of legal authority. "In malicious prosecution plaintiff must allege and prove malice and want of probable cause and the termination of the proceeding favorably to plaintiff whereas in false imprisonment the allegation of want of probable cause is not essential . . . malice is material only on the issue of damages and the termination of the proceeding is not material." [25 C. J. pp. 444, 445.] "Abuse of process lies for the wrongful

use of process duly issued," i. e., the malicious use of valid process after it has been issued "to obtain a result which the process was not intended by law to effect." [25 C. J. 447 and 50 C. J. 612, 614.] A reading of the petition suffices to demonstrate that it does not state a cause of action for either malicious prosecution or abuse of process. If any cause of action be stated it is for false imprisonment, such is the theory of plaintiff's case; it is briefed here upon that theory and by that theory the petition will be tested.

■ In examining the foregoing petition, on the demurrers, for the purpose of ruling the question whether any cause of action is stated the petition must, under our Code, be liberally construed in arriving at its meaning "but this court has uniformly held that the petition . . . must state the facts on which the pleader expects to recover. It will not suffice to plead conclusions of law or the conclusions of the pleader unsupported by the allegation of issuable facts." [National Hollow Brake Beam Company v. Bakewell, 224 Mo. 203, 123 S. W. 561.] We take as true facts well pleaded and such inferences as necessarily and logically flow therefrom but the averment of conclusions of the pleader will not aid the pleading, will be disregarded, and the question of the sufficiency of the facts pleaded to support such conclusions and to state a cause of action remains, nor is a characterization of the facts which amounts to a mere conclusion admitted by the demurrer. [Mack v. Eyssell, 332 Mo. 671, 59 S. W. (2d) 1049; Stephens v. Mound City Liverymen Assn., 295 Mo. 596, 246 S. W. 40; State ex rel. Minnesota Mutual Life Ins. Co. v. Denton, 229 Mo. 187, 129 S. W. 709.] Too in ruling the sufficiency of the facts pleaded to state a cause of action the court will look to material and essential allegations which are not made as well as to those made. [Lackawanna Coal and Iron Co. v. Long, 231 Mo. 605, 133 S. W. 35.]

■ Does the petition state facts, which, with the inferences necessarily and logically arising therefrom, taken as true, show the imprisonment to have been illegal. In making this inquiry we put aside generalizations found in the petition and all matter therein in the nature of conclusions and look to the facts set out for a statement of plaintiff's cause of action. We also put aside all matter set out in the petition as to the alleged malicious motive of defendants in instigating and promoting the contempt proceeding for defendants' motive has no bearing on the question of the legality of the imprisonment and is only material in an action such as this on the issue of exemplary damages. "A lawful imprisonment does not become unlawful because of malicious motives nor does an unlawful detention become lawful because actuated by a laudable purpose or founded in good faith." [25 C. J. pp. 448, 449.]

■ Noting that certain apparently essential allegations are conspicuous by their absence and looking to the facts which are alleged

in this petition, and which we endeavor to arrange in orderly continuity, we find that the petition alleges the filing and prosecution of the equity suit in Grundy County in 1922 wherein all the defendants herein except Barr and Knight were plaintiffs and Knight, trustee and Thompson were made defendants. It is alleged that in that suit the Circuit Court of Grundy County "entered a judgment or decree that Knight as trustee was entitled to the possession of the aforesaid lands; that he was such trustee for the purpose of selling same and to apply the proceeds of such sales to the payment of" Thompson's indebtedness to the plaintiffs in that suit; that pursuant thereto Knight as such trustee sold about 4500 acres of said lands in Grundy, Livingston and Harrison Counties, Missouri, to the Grundy Land Company and made report thereof to the court to which report of sale Thompson filed exceptions; that the court overruled the exceptions and entered its judgment confirming the sale "and providing and directing this plaintiff (Thompson) as defendant in said cause to deliver possession of said lands" sold to the Grundy Land Company to the said company as purchaser thereof and "to deliver possession of such of the same as were not sold . . . to the said Knight himself;" that plaintiff appealed from that judgment to this court. It is not alleged that any appeal or *supersedeas* bond was executed or filed. Continuing the petition states, that on April 12, 1924, "while said appeal was still pending" Knight "as the attorney and agent of the other defendants" in this action and "at their instance, request and direction" filed "in the said circuit court in said cause a representation and charge that this plaintiff had wilfully failed and refused as ordered by the court, as aforesaid, to deliver and turn over to him possession of said land and had wrongfully, wilfully and contemptuously disobeyed and condemned the order and decree of said court directing this plaintiff to turn over to him such possession" and praying that plaintiff be cited to show cause why he should not be punished for such contempt. It is admitted in the petition that "at the time said complaint or suggestion of contempt was so filed and made by said Knight . . . plaintiff was, as he had for a long time prior thereto been, in possession of said lands and on said lands in Missouri had large numbers of live stock, farming implements and personal property." The petition alleges that upon the filing of the complaint aforesaid a citation issued to plaintiff that he appear in said court "on April 24, 1924, at one o'clock P. M., to show cause why he should not then and there be dealt with and punished for contempt of said court." It is not alleged that the citation was served upon defendant. The next steps in the contempt proceeding set out in the petition are that on April 24, 1924, a hearing was had in said court on said complaint, "in the absence of this plaintiff," the court thereupon entered its "order and judgment adjudging and determining this plaintiff to be guilty

of contempt as charged" and an "order or writ" of the court issued directed to defendant Barr, the sheriff of said county, commanding him, as sheriff, to arrest and imprison plaintiff "in jail and to commit him to jail and hold him therein until this plaintiff should deliver possession of said lands . . . and thereby purge himself of" contempt; that acting upon the authority of such writ the Sheriff Barr arrested and imprisoned plaintiff. It is alleged that the hearing was had and judgment entered "in the absence of the plaintiff and without his being present in court" and that the court was without jurisdiction "in the absence of this plaintiff" to adjudge him guilty of contempt and direct that he be arrested and imprisoned therefor and its judgment was therefore void and the writ of commitment under which the sheriff acted also void. Without any other or further allegation as to wherein the court was without jurisdiction or of any irregularity whatsoever in the proceeding or the writ of commitment making same void and rendering the imprisonment by authority thereof illegal the petition repeatedly, by general statement to that effect, avers all such orders, proceedings and the writ of commitment void and that the court was without jurisdiction.

Civil contempt is defined as failing or refusing to do something ordered to be done by a court in a civil action (13 C. J. p. 6) and disobedience of, resistance to or an attempt to prevent the execution of a lawful order, judgment, decree or mandate of a court is such an interference with, or attempt to obstruct, the due administration of justice, as to constitute a contempt (13 C. J. 9). This suit makes a collateral attack upon the judgment rendered in the contempt proceeding alleging that judgment to be void, the writ of commitment issued thereon void and therefore the imprisonment illegal. [9] Our circuit courts as courts of record with general jurisdiction have inherent power to deal with contempt and both by common law and statute have jurisdiction in matters of contempt. [In re Howell, 273 Mo. 96, 200 S. W. 65; State ex rel. Caldwell v. Cockrell, 280 Mo. 269, 217 S. W. 524; In re Knaup, 144 Mo. 653, 46 S. W. 151.] ▆▆▆ The same rule therefore applies here as applies to a collateral attack upon any other judgment of a court of general jurisdiction, i. e., that in a collateral attack upon a domestic judgment of a court of general jurisdiction by a party thereto every reasonable presumption is indulged to support the judgment. [Ray v. Ray (Mo.), 50 S. W. (2d) 142.] ▆▆▆ In order to state a cause of action herein it is incumbent upon plaintiff to set out matter affirmatively showing a want of jurisdiction. As we have pointed out the circuit court has jurisdiction of the subject matter of contempt. ▆▆▆ The petition states that a complaint was duly filed therein charging plaintiff to be in contempt of the court and nothing appearing to the contrary it must be, in view of the subsequent judg-

ment of the court, presumed to have been in proper form and to have stated facts sufficient, if found by the court, to constitute a contempt; whereupon a citation issued. The petition says the citation issued to plaintiff herein commanding him to appear at a time and place therein fixed to answer such charge of contempt. It is not alleged that the citation was not regular or proper in form, timely issued and seasonably served and for that reason the court did not acquire jurisdiction of the person of defendant. It must then be presumed, since the contrary is not alleged, that the citation was duly and timely served and that the court thereby acquired jurisdiction of the person. The petition being silent as to the matters noted it must be presumed "that whatever ought to have been done was not only done but that it was rightly done." "As the first duty of all courts is to keep strictly within the limits of their jurisdiction" the entry of the judgment by the court, pleaded in the petition, nothing to the contrary appearing, invokes and raises the presumption, that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found and that every step necessary to give jurisdiction had been taken, Ray v. Ray, supra.

The mere allegation that plaintiff was not present in court at the time of the hearing and judgment, taken as true, nevertheless does not show the court was without jurisdiction to hear the complaint and enter judgment. Being a proceeding for the enforcement of an order or decree of the court in a civil suit the defendants' presence was not necessary to authorize the court to enter a judgment; a citation is the appropriate process for giving notice and so far as appears from the petition the citation issued was sufficient to inform Thompson of the character of the charge against him and of the time and place of the hearing at which he would have an opportunity to present his defense. "The requirement of due process in such cases is satisfied by suitable notice and adequate opportunity to appear and to be heard. C. F. Cooke v. United States, 267 U. S. 517, 537, 45 Sup. Ct. 390, 69 L. Ed. 767, 774." [Blackmer v. United States, 76 L. Ed. 375; Barclay v. Barclay, 184 Ill. 471, 56 N. E. 821.] The fact that Thompson did not attend the hearing, after proper and timely notice given, did not deprive the court of jurisdiction to proceed to hear the complaint and enter its judgment.

It is next argued that the petition shows that the contempt proceeding was instituted, tried, judgment entered and commitment issued while the appeal taken by Thompson from the decree of the court in the equity case was pending, and undetermined, in this court and for that reason the circuit court was without jurisdiction to enforce the order that possession of the land be delivered as made by its decree and judgment in the equity case. The petition states merely that an appeal was taken, nothing more. It does not allege that a *supersedeas* bond was given whereby the enforcement of the

judgment was stayed. With the allegation limited merely to the assertion that an appeal was taken the presumption attending the judgment of the court and which we have above discussed is not dissipated thereby. From that allegation it cannot necessarily and logically be inferred that an appeal bond was given. The allegation shows no more than this court was invested with jurisdiction of the appeal but in the absence of bond the judgment of the circuit court was not suspended and that court, while powerless to take any further judicial action in the case pending the appeal, could act to enforce and execute its judgment by and through proper process. [Rodney v. Gibbs, 184 Mo. 1, 82 S. W. 187; Vantine v. Butler, 250 Mo. 445, 157 S. W. 588.] The circuit court had jurisdiction to render judgment in the equity suit and that judgment was not suspended or stayed by the appeal. In such case the court had authority and jurisdiction "to make such orders and issue such writs" as may have been "necessary and essential to carry the judgment or decree into effect and render it operative." [7 R. C. L. p. 1034.]

Plaintiff says in his petition that "intending and to the end that he might observe and obey said order for delivery of possession of said lands this plaintiff and said Knight agreed and said Knight consented that this plaintiff should have a reasonable opportunity to sell and dispose of his said personal property on said lands . . . at public and other sales to be had on said lands;" that "shortly after" Knight filed the complaint in the contempt proceeding plaintiff proceeded to advertise a public sale of his personal property to be held on May 3, 1924, and that his imprisonment for contempt interfered with the conduct of that sale to his damage in an amount stated. The matter thus pleaded may have been set out merely in connection with damages claimed. We do not perceive how it affects the validity of the contempt proceeding or would tend to show that proceeding, the judgment therein and writ of commitment issued pursuant to such judgment, void. The decree in the equity suit was entered on March 21, 1923, the complaint in the contempt proceeding was filed April 12, 1924. For more than a year after he was ordered by the court to vacate the land and deliver possession thereof to Knight, trustee, and the Land Company, Thompson appears to have retained and continued in possession, as he says in this portion of the petition, under an agreement with Knight that he might have a reasonable time to sell his personal property by sales to be made on the land. After the complaint is filed he proceeds to advertise a public sale of "such property" for May 3. Assuming such agreement with Knight was had, as we must, it is not alleged when the agreement was made and presumably it was made at or about the time the decree was entered since plaintiff sets the agreement up as an explanation of, and excuse for, his failure to obey the order and decree of the court that he vacate said lands and deliver

immediate possession thereof to Knight, trustee, and the Land Company. We must assume that the court upon the hearing found facts sufficient to warrant and sustain its judgment and if it be allowed that by such agreement Thompson was relieved, for a reasonable time, from compliance with the order of the court, the matter of what was a reasonable time and whether he had retained and continued in possession and refused to deliver possession after such reasonable time had been granted was resolved by the finding and judgment of the court.

As we have endeavored to point out facts are not sufficiently alleged showing a want of jurisdiction in the court to entertain and determine the contempt proceeding. The court had inherent power, in a proper case, to hear such complaint and enter judgment, i. e., had jurisdiction of the subject matter of contempt and nothing to the contrary being alleged, and allowing the presumption attending the judgment of the court, jurisdiction of the person was regularly acquired. Thus the facts alleged do not tend to impeach the judgment or show it to be void, nor is anything found in the facts set out to show the writ of commitment issued thereon to have been other than fair and regular on its face. The separate demurrer of the defendant Barr, the sheriff serving the writ, was properly sustained. The general rule being that "process not void on its face, issued by a judicial tribunal having general jurisdiction of the subject-matter and of the person is a protection to the officer executing it. . . . The officer is not required to look beyond the" writ "to the validity and regularity of the proceedings on which it is founded nor exercise his judgment touching its validity in point of law." [25 C. J. p. 486.] But our conclusion from the examination we have made of the petition as a whole is that the facts therein set out are not sufficient to state a cause of action for false imprisonment as to any of the defendants. Such facts do not show the imprisonment to have been illegal; it appears rather to have been under judicial process regularly issued, fair upon its face and based upon a judgment of a court of competent jurisdiction. Where the alleged wrongful detention is pursuant to judicial process the petition in the action brought for false imprisonment must state facts showing that the court issuing the process was without jurisdiction.

For the reasons stated the judgment of the circuit court dismissing the petition, as to all the defendants, effected a correct result and is therefore affirmed. *Sturgis* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.